WOLF MARKS AND ANOTHER, RESPONDENTS, v. WIL-
LIAM H. CULMER AND OTHERS, APPELLANTS.

TRESPASS. — OWNER. —ATTORNEY. — LIABILITY.— EXEMPLARY DAM-
AGES.—The claimant of premises who instituted suit and his
attorney who obtained a judgment by default, and a writ of res-
titution which was void (affirming *People* v. *Hill*, 5 Utah, 410),
and directed a constable to execute the writ of restitution, and
who had no further connection with the trespass neither by way
of instigation or ratification, and where there is neither malice nor
bad faith shown are liable for the damages that actually occurred
through service of the writ, and not for exemplary damages for
acts of the constable unauthorized by the writ.

ID.—EVIDENCE.—IMMATERIAL TESTIMONY.—Where testimony that is
immaterial as against the other defendants is admitted for the
purpose of implicating another defendant as to whom a non suit
is granted by the court, the testimony so admitted should be by
the court excluded from the jury, and they should be told to
disregard it.

ID.  MEASURE OF DAMAGES.—DESTRUCTION OF HOUSE—Where the
property destroyed is of such a nature that it can readily be re-
produced, the measure of damages is what it would cost to re-
produce it, and the value of its use while it was being done.

APPEAL from a judgment of the district court of the first
district, and from an order refusing a new trial.   The opin-
ion states the facts.

*Mr. J. G. Sutherland* and *Mr. Arthur Brown* for the
appellants.

*Mr. David Evans, Mr. George Sutherland, Mr. Samuel
R. Thurman* and *Mr. Charles S. Varian* for the respond-
ents.

HENDERSON, J.

This cause was commenced in the first district court at
Provo, by Wolf Marks and Anna Marks, against William
H. Culmer, Jabez G. Sutherland, John T. Sullivan, Dan-
iel S. Dana, Delos Lombard, Harvey K. Tompkins and
Belle Tompkins.   The complaint alleges that the plaintiffs

are husband and wife, and that the defendants Harvey and Belle Tompkins are husband and wife, and that each of the said defendants, individually, participated in the wrongs therein stated; and, for the first cause of action, it alleges "that on the 19th day of December, A. D. 1887, the said defendants unlawfully, with force and arms, and with a multitude of people broke and entered a certain dwelling-house, the property of plaintiff, Anna Marks, situated about ten feet southerly of the store known as 'A. Marks' Store,' in the village or mining camp of Eureka, Juab county, Territory of Utah, and forcibly ejected said plaintiffs, and put them out of said house, and broke the doors and windows of, and tore down and destroyed the same, and took out and threw away, broke and destroyed certain household goods and chattels of the value of three thousand dollars to the damage of said plaintiffs in the sum of five thousand dollars." And, for a second cause of action, it alleges that the defendants, at the same time and place, "forcibly, unlawfully, willfully and wantonly and by force, with a multitude of people, broke and entered the same dwelling-house described in the first cause of action, and took out and destroyed, and threw away, certain moneys, household goods, wearing apparel, furniture and other goods and chattels [particularly describing them,] then and there the property of the said plaintiff Anna Marks; that plaintiffs were thereby damaged in the sum of three thousand dollars." Judgment is prayed for on both causes of action. The defendants answered, denying all the material allegations of the complaint, alleging that the lands upon which the house mentioned in the complaint stood was a part of the premises known as the "Eureka Hotel" in Eureka Mining Camp, in Juab county; that the title and right to the possession thereof, subject only to the paramount title of the United States, was in the defendant Culmer; that the defendant Belle Tompkins and her husband, Harvey Tompkins, were, prior to the erection of the house in possession of said property under Culmer, and that plaintiff Anna Marks, just prior to the time stated in the complaint, by force and arms, and by wilfull trespass, entered upon said premises so in the possession of said

defendants Belle and Harvey Tompkins, and erected said house, contrary to the law and their rights; that thereupon said defendant Belle Tompkins, acting under the advice of defendant Sutherland, who is an attorney-at-law, commenced suit before John E. Hills, a commissioner of this court at Provo, against said Anna Marks, pursuant to the Code, to eject her therefrom and regain possession; that said suit was prosecuted to judgment in favor of defendant Belle Tompkins, upon which a writ of restitution was issued, which was delivered to defendant John T. Sullivan, who was constable of Eureka precinct, and that he executed the same by putting plaintiff Anna Marks and her goods out of said premises; that it was done carefully," etc.

The case was brought to trial before a jury, and from the evidence it appeared that the premises are situated in Eureka, a mining camp in Juab county; that the entire settlement or village is on lands belonging to the United States, not subject to entry except for mineral, and that no entry had ever been made on any of the lands involved, and that occupants only have a possessory right as against others, subject to the paramount title of the United States; that defendant Culmer was recognized as, and was, the owner of this possessory right to what is known as the "Eureka Hotel" property. The hotel building was situated on the south side of the main street of the settlement, with cellar and out-houses in its rear; and west on the street, perhaps fifty or sixty feet from the hotel, was the hotel barn. Immediately west of the barn, leaving only an alley-way about ten feet wide, was a store building owned and occupied by the plaintiffs. This was a long building, extending back from the street considerably further than the hotel barn. This store building was divided into two parts. In the front part, Mrs. Marks carried on a mercantile business of some kind; and the back part was used as a dwelling, in which they lived. Culmer did not live in Eureka. He had rented the hotel property to Mrs. Tompkins, who was herself carrying on the hotel business; her husband being in other business, and residing with her. The premises back of the barn,

and adjoining the rear of the store building, were claimed by Culmer and his tenant, Mrs. Tompkins, as part of the hotel premises, and to be in their actual possession, while Mrs. Marks claimed that it was not occupied by them, or at least that it was not so exclusively in their possession as to preclude her from taking possession; and out of this dispute this controversy has arisen. This being the condition of things, some time before the alleged trespass, Mrs. Marks assumed to take possession of ground in the rear of the hotel barn. This was resisted by Mrs. Tompkins. The testimony on the trial was very conflicting as to the possession of this piece of ground at that time. Many witnesses testified that it was inclosed with the hotel property, and that Mrs. Marks removed the fence; and many testified to the contrary. During the year previous to the alleged trespass, both parties (Mrs. Tompkins and Mrs. Marks) had tried to maintain a possession as against each other; Mrs. Marks removing the fences erected by Mrs. Tompkins. Several affrays and arrests had resulted; and on one occasion, at least, Mrs. Marks used a revolver. A short time before the alleged trespass, Mrs. Marks entered upon the land with a force of men, and commenced the erection of a small building at right angles with her store building, commencing within three or four feet of the southeast corner thereof, and extending west back of the barn. Mrs. Tompkins remonstrated, and telegraphed for Culmer, who also went to Eureka, and remonstrated with Mrs. Marks, and tried to make the workmen desist, and offered to pay them to tear down what had then been erected. Culmer thereupon went to Salt Lake, and consulted his attorney, defendant Sutherland, who directed him to institute proceedings in the name of his tenant, Mrs. Tompkins, to recover possession of the land. Sutherland thereupon commenced an action under the forcible entry and detainer act against Mrs. Marks, before Commissioner Hill, at Provo. The summons in this case was served on Mrs. Marks before she had completed the house, or moved into it; but she finished and moved into it before the return-day.

In the case before the commissioner, there was some

misunderstanding as to the time when it was to be tried,. which resulted in judgment passing for the plaintiff by default on the 17th day of December, 1889. Sutherland and Culmer were present at the rendition of judgment, and a writ of restitution was issued; and Sutherland delivered it to defendant Lombard, who was subpœnaed as a witness on that trial, and directed him to take it to Eureka and deliver it to a constable, and to say to the constable that it was his direction to serve it, and, if he was resisted in its execution, to cause the persons so resisting to be arrested. Lombard took the writ to Eureka, and delivered it to defendant Sullivan, who was a constable, telling him what Judge Sutherland had said. This was all that defendant Lombard had to do with the matter. Sullivan proceeded to serve the writ on the 19th. The testimony as to what occurred was very conflicting; but it sufficiently appears that Sullivan went to Mrs. Marks, at the store where she and her husband were, and asked to see her in the house; that, when they went there, he explained to her the business. She wanted time to communicate with her attorney at Provo. This Sullivan refused. She requested time to consult one Watts, an attorney in town, which was granted. Sullivan retired. When he returned, with assistance, to remove the furniture, he found the doors closed. He demanded admission, threatening to break open the doors. Mrs. Marks was armed, with a revolver in each hand, and threatened to shoot him if he broke in. Thereupon Sullivan went before defendant Dana, who was a justice of the peace and made complaint, and obtained a warrant, and went back with a number of persons whom he had called to assist him, some of them armed with guns. Upon their approaching the house, Mrs. Marks laid down on her bed, and put her revolvers under her pillow. Sullivan broke open the door, and with assistance took Mrs. Marks from the bed and carried her before Dana. The plaintiff's testimony showed that this was done in a harsh and cruel manner, and that she was treated by Dana, when brought before him, with great indignity. This testimony was allowed, against defendant's objection. Sullivan then returned to the store, and requested the

plaintiff Wolf Marks' permission to put the furniture in the back part of the store. This was refused. Sullivan then removed the furniture and goods in the house therefrom, and placed them near the door, at the rear end of the store building, and delivered the house to Mrs. Thompkins and her husband, who at once tore it down, and put up a fence inclosing the ground in their premises. Sullivan again went to Wolf Marks in the store, after removing the goods, and told him where they were, and requested him to take them into the building, which Marks refused, saying he would have nothing to do with them. These goods remained there for several weeks, and were then taken into the store building; and it was claimed by the plaintiffs that when they were taken back into the building a large portion of them were gone, among which was $550 in money, and a large amount of valuable goods, and that the balance was spoiled. At the conclusion of the plaintiffs' testimony the defendants moved for a nonsuit as to defendants Lombard, Dana and Culmer, to which the plaintiffs consented as to Lombard; and it was granted by the court as to Dana, and denied as to Culmer.

At the close of the testimony the court, among other things, charged the jury that the writ of restitution issued by Commissioner Hill was absolutely void, and of no effect whatever, and was no justification for any act done by any of the defendants under it, and further charged the jury as follows: "With reference to the property removed from the house, the court instructs you that if you shall find for the plaintiff, after having assessed the value of the house, you will then proceed and calculate as to the value of the property removed from it. Upon that subject the court instructs you this to be the law; that, although these defendants may have been guilty of a trespass and a wrong in removing this property from this house, nevertheless it was the duty of the plaintiff and her husband to exercise reasonable care and diligence in its preservation, if they had opportunity to do so. If one of you should pass a wheat field of another, and wantonly pull down his fence, and cattle are ranging near by, and the owner shall stand by, and see the fence down, and the cattle near by, it is

his duty to put that fence up, and exercise reasonable care and diligence in avoiding damages. The man could not pass by, and leave the fence down, and make the original trespasser liable for any such damage as he himself could have reasonably avoided by his own exertion in putting up the fence. (13) I may further say to you, if you believe that these transactions were wanton, were malicious, were the result of a combination on the part of all these people to oust this woman at all hazards, without regard for her rights—if the proof shall demonstrate a purpose upon these defendants of that kind—then you may go further, and give such additional damages to compensatory damages, (concerning which the court has been instructing you), by way of punishment, as in your sound discretion seems to be just and proper. It is commonly called 'smart money,' or 'punitory damages.' It is that class of damages that a jury may be allowed to give in case of trespass, where the wrongs were done with a bad motive, and a reckless disregard of the rights of others. (14) If you find, upon the instructions I have given you, for the plaintiff, and you find that it was no part of the original design of Sullivan and Culmer and Sutherland to tear down this house, and if you find, under the instructions I have given you, that they are not liable for the trespass in tearing down the house, then you will give only such a verdict against them as may have resulted from their connection with it, as under the instructions I have heretofore given you; and then you will give such damages against Tompkins and wife as their connection may warrant, under the instructions I have given you, together with damages for the destruction of the house. So that, gentlemen, you can only find separate verdicts, as I have indicated to you, if and when you shall find that it was no part or result of the original design to destroy this house by all these people. (15) If you shall find it was no part, you shall give separate verdicts. If it was a part of the original design, they are all liable, and you will give a round verdict against all." Exception was duly taken to all these instructions by defendants. The jury returned a verdict in favor of the plaintiffs for $2,500 against defendants William H.

Culmer, Belle Tompkins, Harvey Tompkins and Jabez G. Sutherland, and in the favor of the defendant John T. Sullivan. The defendants moved for a new trial, which was denied. Judgment was entered upon and pursuant to the verdict, and the defendants appeal from the order denying the motion for a new trial, and from the judgment.

As to the instructions of the court that the writ of restitution issued by Commissioner Hill was absolutely void, this court held in the case of *People* v. *Hills,* 16 Pac. Rep. 405, 5 Utah, 410, that the commissioner had no jurisdiction over the case. This decision was made after the alleged trespass, and the appellants do not contend in this court that the writ of restitution was valid. This record presents the question as to the proper rule of damages, and the degrees of responsibility of the various defendants. The verdict, to say the least, is peculiar. The court instructed the jury that the writ of restitution was no justification to any of the defendants. The testimony showed that defendant Sullivan was the only one of the defendants who had anything to do with the removal; yet the jury find in his favor, and against the other defendants. Strictly, this verdict in favor of Sullivan could only be accounted for upon the ground that the land where the house stood was part of the hotel property, and was in the actual possession of Mrs. Tompkins, and that Mrs. Marks entered by a trespass, in which event the court told the jury that the defendants had the right to remove her and her goods from the premises without regard to the writ of restitution, using no more force than was necessary for that purpose. The verdict against the other defendants rebuts that construction of the verdict; and we are only left to infer that the jury found that Sullivan, being an officer, and having a writ fair on its face, did nothing but what the mandate of the writ required, and did not go beyond it, or act oppressively or harshly, and that, therefore, he ought not to be liable. There was abundant evidence to support the latter proposition; but, according to the instruction, Sullivan was liable for the actual damages for obeying the mandate of his writ, unless the removal was wholly justified.

The court submitted to the jury the question as to exemplary damages, and full value of the house, and of the loss in personal property as to all of the defendants, and refused to charge them, as requested, that there was no evidence in the case that defendants Sutherland and Culmer were liable for anything but such actual damages as would have been necessarily incurred by the proper excution of the writ, if had been legal; and in this we think the court erred. The only evidence in the case tending to show that defendant Sutherland was liable was the fact that he directed the writ to be served, and, in case it was resisted, to resort to legal proceedings.

Judge Cooley, in his work on Torts, (page 131), says: "An attorney who delivers a writ to an officer for service does not personally assume any responsibility in respect thereto, except to this extent; that he is understood as directing the officer to proceed to obey the command of the writ. If, therefore, the writ is illegal, and the officer makes himself a trespasser in serving it, the attorney is liable as joint trespasser with him; but if the officer exceeds the command in the writ, or does anything which its command, if legal, would not justify, the attorney is not responsible, unless he counsels or assists in it, in which case his liability rests upon the same ground as that of any other participant in a trespass." This, we think, expresses the correct rule. The only other circumstances which it is claimed connected Sutherland with the trespass, or established a liability against him for exemplary damages, was that he was guilty of some unfairness in the conduct of the case before Hill, in taking judgment, and in refusing to delay the issuing of the writ of restitution. If this was true, it only would show that he was anxious for the benefit and advantage which a writ of restitution would give his client, but is not evidence that he intended anything beyond what such a writ would give him. Parties are only liable for such wrongs as they have participated in committing, or approved or ratified or directed or authorized. Cooley, Torts, 127; 1 Wat. Tresp., Sec. 22 *et seq.* In this case there was no evidence that Sutherland participated personally in the trespass. He was not

in Eureka, and knew nothing of what was being done. There is no evidence that he ratified it afterwards. He can only be liable for directing and authorizing it. The only authority or direction shown in this case was contained in the writ of restitution, and his liability would not extend beyond its proper execution. The instructions given left the jury to infer that, under the evidence, they might assess damages against Sutherland beyond the actual damages for the proper service of the writ; and by giving "a round verdict" against the four defendants jointly, and for a sum greatly in excess of the actual damages, it is plain that they did so understand it.

It was strongly urged on the argument that the verdict was not in excess of the actual damages as testified to by the plaintiff Mrs. Marks, that the value of the goods actually taken and carried away was over $2,000, and that the value of the house destroyed was $550. It would be sufficient answer to this to say that the testimony was very conflicting upon that subject, and that this court could not undertake to determine this question of fact; but there was no evidence in the case tending to show an asportation of goods by any of the defendants but Sullivan. There was no evidence that Sutherland or Culmer authorized or directed or participated in or ratified an asportation. It was not within the mandate of the writ. But, as before shown, the jury have found that there was none by Sullivan. It is more than probable that the jury found from the evidence that whatever was lost of the goods was chargeable to the want of care and attention of the plaintiffs themselves.

There is no evidence tending to show that there was anything done with the goods on the day of the removal but to remove them from the house and set them upon the platform around the rear door of plaintiff's store; and the only evidence of loss is an inventory taken by plaintiff five or six weeks after, when they were taken from the platform into the store, at the advice of McClelland. The excuse offered for this delay and inattention is wholly unsatisfactory, and was no doubt so considered by the jury. So that, so far as Sutherland and Culmer are concerned,

the asportation of goods was no part of the damage with which they can be charged.    As to the destruction of the house, there is no evidence tending to show that Culmer, when he was in Eureka, a few days before the acts complained of, and while Mrs. Marks was building the house, tried to employ men to take it down and remove it.    This may be considered as evidence tending to show his authority for this part of the transaction.    The only other circumstance, shown by the evidence, tending to show liability on the part of Culmer, is that he directed suit to be brought; but the mere fact that a party directs suit to be brought, or directs process to be issued, does not charge him with responsibility for an abuse of the process.    If the writ is. void, but he acts in good faith, he is not chargeable for acts beyond or in excess of its mandate.    Cooley, Torts, 131; *Averill* v. *Williams,* 1 Denio, 501; *Adams* v. *Freeman*; 9 Johns. 118.    But, as to Sutherland, there was no evidence whatever as to his participation in it except what could be inferred from his relations with the parties as their attorney in the case before Hills; and this was insufficient to charge him with it.    The commencement and prosecution of the action before a commissioner who had no jurisdiction was not, of itself, evidence of malice or bad faith.    In *People* v. *Hills, supra,* this court said: "We entertain no doubt that the commissioner is acting in good faith, as there has been diversity of opinion in the profession, and among commissioners, as to the construction of the statute under consideration."    This applies equally to the parties and attorneys.    That was the first authoritative decision upon the question.    We think the court erred in submitting to the jury the question of exemplary damages as to all of the defendants, and in not charging, as requested, that there was no evidence tending to show that defendants Culmer and Sutherland were liable for an asportation of the goods, and that defendant Sutherland, at least, would not be liable for any damages other than such actual damages as were occasioned by the proper execution of the writ of restitution.

We also think that the court erred in not withdrawing from the jury the testimony relative to what took place in

Dana's office.   This testimony was highly colored and extremely sensational, and was well calculated to prejudice the jury.   It was received, against the objection of the defendants, for the purpose of implicating Dana in the transaction complained of.   When it was found that it was an entirely separate transaction, and a nonsuit as to Dana was granted for that reason, the attention of the jury should have at least been called to that testimony, and they should have been directed to disregard it.

The charge relative to the actual damage for the destruction of the house was also misleading, so far as actual damages were concerned; the property being of such a nature that it could be readily reproduced.   Its value to the plaintiffs would be what it would cost to reproduce it, and the value of its use while that was being done.   *Loker* v. *Damon*, 17 Pick. 284;   *Baker* v. *Drake*, 53 N. Y. 216;  3 Suth. Dam. 475, 476.      For these errors the judgment should be reversed, and a new trial had.

ZANE, C. J., and BLACKBURN, J., and ANDERSON, J., concurred.