WILLIAM H. CULMER, APPELLANT, *v.* R. G. WILSON
AND BELLE WILSON, HIS WIFE, RESPONDENTS.

JOINT TORT FEASORS—CONTRIBUTION—LIABILITY OF HUSBAND FOR
    TORTS OF WIFE—ACTION FOR INDEMNITY—WHEN ACCRUES.

1. Where a trustee enters suit at the request and for the benefit
    of the *cestui que trust,* and wrongfully and knowingly
    obtains a judgment in a court having no jurisdiction in the
    case, and the circumstances are such as to show that he
    knew the illegal nature of the act, or were sufficient to
    render ignorance of the illegality inexcusable, and he
    becomes thereby a joint trespasser to a void judgment, and
    where such trustee or agent is sued jointly with the principal
    for damages arising from the illegal proceedings
    trespass, and judgment, and he pays the judgment rendered
    against both, then he will be left by the law where his
    wrongful act places him. In such case the rule that precludes
    one tort feasor from indemnity against the other
    applies, and he is not entitled to contribution from the
    other tort feasor.

13 UTAH—9

2. But when a naked trustee or agent enters suit at the request and for the benefit of the *cestui que trust*, and is innocent of any illegal purpose, ignorant of the nature of the act, which was apparently honest and proper, and acted in good faith, with an honest purpose, in what appeared and he believed to be right, and, from the nature of the case, he could not be presumed to know that he was doing an illegal act, and the tort is one arising from a construction or inference of law, and not arising from a known meditated wrong, and he pays the judgment rendered against both, then the rule changes the reason, and such innocent agent may have contribution from the joint tort feasor.

3. When a party sued as a joint tort feasor makes a *bona fide* claim to the property, and seeks to obtain possession by legal process, from a court that he believes has jurisdiction, he may direct his agent to do those acts necessary to be done in asserting those *bona fide* rights, and if it is decided that such claim is invalid, or that the court has no jurisdiction, in the eyes of the law, growintg out of the mere relation of the perpetrators of the injury, the maxim of the law that there is no contribution among wrong doers does not apply, and the law will imply an indemnity to such agent who believed as his principal did, and who acted in good faith, and was innocent of any wrongful intent or purpose, for any damages he was made to pay on account of such act done in pursuance of his principal's direction, within the scope of his instructions and employment.

4. Our statutes have relieved married women from common-law disability, and given them independent power to deal with, manage, control, transfer, dispose of, hold and enjoy all their separate property, without limitation or restriction by reason of marriage, to make contracts, contract property, to sue and be sued, defend and be defended, and in all respects places her in the same position with reference to contracts, property and liability, on the same footing with other persons; and, when a failure to perform a duty under a contract is itself a tort, it may be treated as such against a married woman, thus taking away a reason of the common-law rule. And while the statutes do not in express words repeal the common-law rule that the husband is liable for the torts of the wife, it has made such modifications in the

husband's rights and her disabilities as to wholly remove the reason for his liability. So that she can control her time, earnings and property, and must be held liable for her torts.

5. The husband is not liable for the torts of his wife committed before marriage, and while she was the wife of another man.

6. In an action for indemnity against actual damages, the party indemnified has no cause of action until he is damaged; and the statutes of limitations do not commence to run until the judgment rendered against him for damages is paid.

(No. 654. Decided March 26, 1896. 44 P. R. 833.)

Appeal from the district court of the Third judicial district, Territory of Utah, Hon. S. A. Merritt, *Judge.*

Action by William H. Culmer against R. G. Wilson and Belle Wilson, his wife, for contribution for damages paid by plaintiff as joint tort feasor in a case in which he, as naked trustee for Belle Wilson, had been sued jointly with her and with her former husband, by name of Tompkins, for trespass committed by them in the execution of an unlawful judgment, rendered by a United States commissioner who had no jurisdiction in a case brought by plaintiff solely at the instigation of the said Belle Wilson. Plaintiff paid the damages awarded against him, and to this action for contribution against Belle Wilson and her husband, R. G. Wilson, to whom she was married when this suit was brought, defendants demur. From a judgment on the demurrer, plaintiff appeals. Affirmed as to R. G. Wilson and reversed as to Belle Wilson.

*Sutherland & Murphy,* for appellant.

Respondent insists that as his wife was the wife of another man when this obligation of indemnity attached, he alone is liable as husband.

Tompkins, the former husband, was liable as such while his marital relations subsisted. On the divorce being granted dissolving that marriage Tompkins was discharged, and from that time it became and was the liability of the wife until her marriage to defendant Wilson. *Bryan* v. *Doolittle*, 38 Ga. 255; *Parker* v. *Steed*, 1 Lea, 206.

On that event the liability attached to him. 2 Kent's Com. 143, 149; Schouler Dom. Rel. secs. 56, 75; Stewart on Husb. & W., secs. 448, 463; *Handy* v. *Foley*, 121 Mass. 259; *Gray* v. *Thacker*, 4 Ala. 136; 9 Am. & Eng. Ency. L., pp. 823-25; *Prescott* v. *Fisher*, 22 Ill. 390; *Moon* v. *Lesaw*, 18 Ala. 606; *Angel* v. *Felton*, 8 John. 140; *Carl* v. *Wonder*, 5 Watts. 97, 98; *Platner* v. *Patchin*, 19 Wis 333.

In Kent's Commentaries, above cited, it is laid down that:

"The husband is answerable for the wife's debts before coverture; but if they are not recovered during the coverture he is discharged."

Schouler says, section 56, above cited: "The husband remains liable for the debts of his wife, *dum sola*, only so long as the coverture lasts. As his liability originated in the marriage, so it ceases with it."

In *Crane* v. *Van Dwyne*, 9 N. J. Eq. 259, it was held that if a *femme sole* being an executrix or an administratrix wastes the goods of her testator or intestate, and then marries, her husband is liable as long as the coverture lasts.

The same is decided in *Ferguson* v. *Collins*, 8 Ark. 241.

In *Capel* v. *Powell*, 17 C. B., U. S., 743, it was held that a divorced husband was not liable to be joined in an action for a tort committed by his wife during coverture.

By the common law, the husband succeeded to his wife's personal property, chose in action, and possession of real property. But his liability for her ante-nuptial

debts and torts did not depend on his obtaining any property by his marriage. *Heard* v. *Stamford*, 3 P. Will. 400; Schouler on Dom. Rel., sec. 56; *Alexander* v. *Morgan*, 31 Ohio St. 546.

He is also entitled to her services. His liability for her ante-nuptial contracts or torts is not affected by any ante or post-nuptial agreement; nor do Married Women's Statutes destroy this liability unless they so provide in terms or by necessary implication. *Conner* v. *Berry*, 46 Ill. 370; *Borley* v. *Rampacker*, 5 Duer. 183; *Alexander* v. *Morgan*, 31 Ohio St. 546; *Platner* v. *Pachin*, 19 Wis. 333; *Quick* v. *Miller*, 103 Pa. St. 67.

In Illinois it was held that the statute having taken away all of a husband's pecuniary rights, the reason of his liability for his wife's ante-nuptial debts had ceased and therefore that liability had ceased. *Martin* v. *Robson*, 65 Ill. 129.

But as long as he was entitled to his wife's services, though he could claim no part of her property, he was held liable for her ante-nuptial debts and torts. *McMurtry* v. *Webster*, 48 Ill. 123.

Married Women's Acts, which do not expressly refer to and take away from the husband his right to his wife's earnings, do not change his common law right to them. 9 Am. & Eng. Ency. L. 819; *Sietz* v. *Mitchell*, 94 U. S. 580; *Merrill* v. *Smith*, 37 Me. 394; *Glover* v. *Alcott*, 18 Mich. 470.

The Utah statute does not deprive a husband of his wife's services. 2 C. L. sec. 2528.

*C. S. Varian*, for respondents.

The case is one where several parties are made to answer for a joint trespass. The judgment against them is conclusive of the liability of each, and, that they committed the wrong, *intending* to commit it, or did the act

under circumstances fairly charging them with intending the consequences. Cooley Torts, 1st Ed. p. 133.

The general rule denies contribution or indemnity between tort feazors on the ground that no man can make his own misconduct the ground for an action in his own favor. Cooley, p. 144; *Chicago* v. *Robbins*, 2 Black, 424-425.

Exceptions to the rule have been variously stated. In a case in Ohio (for contribution) the court puts the right of contribution upon the ground of honest belief of the parties that they are doing a legal and proper act, and denies the right when they are conscious of doing a wrong. *Acheson* v. *Miller*, 2 Ohio St. 203.

But this is not accurate. The wrongdoer is not excused as against his co-tort feazor, where he is presumed to have known the act to have been unlawful. *Bailey* v. *Bussing*, 28 Conn. 453.

In this case the court defines the exception to be, where one innocent of an illegal purpose, "ignorant of the *nature of the act*, which was *apparently correct and proper.*" P. 458.

Cooley also questions the accuracy of the statement by the Ohio court and approves the principle laid down in the Connecticut case and as stated by an English court. Cooley, pp. 145-146-7-8; *Adamson* v. *Jains*, 4 Bing. 66-73; *Betts* v. *Gibbins*, Ad. & El. 57-74.

The case of *Avery* v. *Halsey*, 14 Pick. 174, has been cited sometimes in aid of the claim made by this complaint. In that case there was an honest disagreement between persons as to the ownership of property. The plaintiff aided one party to remove a blacksmith shop upon the express promise to indemnify made by defendant. The promise to indemnify was held valid, *because* the plaintiff had reasonable ground to believe his employer was the true owner.

Defendant Belle only requested plaintiff to take proper proceedings. He did not bring the wrongful suit on her request, but on the advice of her attorney.

Here it appears that Belle Thompson only requested plaintiff "to take such proceedings as would prevent Anna Marks from maintaining her tortious possession, etc." Plaintiff after consulting his attorney selected his "proceedings" and the forum.

The rule is, that a principal cannot require an agent to perform an unlawful act, and if the agent performs an act, knowing it to be unlawful, or which he must be *presumed* to have known was unlawful, he can not have indemnity. Meachem on Agency, sec. 654; *Coventry* v. *Barton,* 17 Johns. 142; *Coventry* v. *Barton,* 8 Am. Dec. 376.

The concluding statement in the complaint that Culmer's acts were all done in the belief that they were legal, might well be considered in mitigation of damages in action against him (and probably were) but surely cannot cast a responsibility upon Mrs. Wilson, which she did not assume.

MINER, J.:

The complaint in this case shows that the plaintiff held title to certain real estate in Juab county, merely as trustee for the use and benefit of the defendant Belle Wilson, who was then the wife of Harvey K. Tompkins; that plaintiff had no beneficial interest therein, and that in September, 1887, he conveyed the property to said Belle Wilson; that the plaintiff simply held the title for her in trust on account of the intemperate habits of her then husband; that prior to said conveyance to her, in 1887, the said Belle Wilson informed the plaintiff that one Anna Marks was wrongfully entering upon said property, by attempting to take possession of a portion of the same, and erect a house thereon, and that said acts were

an interference with her rights in said property, and requested plaintiff to consult an attorney, and cause such proceedings to be taken as would prevent said Anna Marks from maintaining her tortious possession of said property; that plaintiff gave full credit to such statements and instructions, and in pursuance to said Belle Wilson's request, he, fully believing in the merits of her claim, consulted an attorney, and followed the instructions and advice of said attorney, and filed a complaint prepared by said attorney, with a commissioner appointed by the supreme court, and having jurisdiction of a justice of the peace, residing and holding his office at Provo City, Utah county, to commence an action in the name of Belle Tompkins (now Belle Wilson) against said Anna Marks, for forcible entry and detainer of the premises; that at such time the jurisdiction of a supreme court commissioner was not defined by law; that said plaintiff fully believed that said commissioner had jurisdiction to try said action; that, acting in concert with said attorney, and under his directions, and under the directions of the said Belle Wilson, he assisted in the prosecution of said suit to a judgment for a restitution of the premises, and a writ of restitution was issued by said commissioner, and placed in the hands of a constable at Eureka, Juab county, for execution; that all the acts of said plaintiff were simply to advance the interests of said defendant Belle Wilson, fully believing she had suffered wrongs from said Anna Marks, and that said proceedings were proper and lawful to protect her rights; that said writ was executed at the request of said Belle Wilson in December, 1887, but that plaintiff was not present at the execution of the same; that, under said writ, Anna Marks was ejected, and Belle Wilson restored to possession; that on February 27, 1888, said Anna Marks and Wolf Marks, her husband, brought an action in the district

court against Belle Wilson, this plaintiff, and others, claiming damages for a trespass in being unlawfully ejected under said writ, and on April 30, 1892, judgment was duly rendered in said action, against said Belle Wilson, this plaintiff, and others, for the sum of $3,500 damages, and $205.90 costs of suit, which judgment was afterwards affirmed by the supreme court; that on said trial it was held that said commissioner had no jurisdiction to try the case; that on October 1, 1891, said Belle Wilson, formerly Belle Tompkins, intermarried with said defendant R. G. Wilson, and in December following, she conveyed to said R. G. Wilson said real estate and all other property belonging to her; that on July 1, 1893, execution was issued on said judgment, of which plaintiff had notice, and plaintiff paid said judgment and costs, amounting to $4,052.65, and took an assignment of said judgment; that plaintiff's participation with Belle Wilson in said action in said alleged trespass complained of was as her agent and servant, and in her interest and for her benefit; that all his acts were done in the firm belief that said Belle Wilson had the right which she asserted, and that the acts done by plaintiff were legal acts, to enable said Belle Wilson to enjoy her own property, and therefore claims that defendants are bound to indemnify said plaintiff against all legal consequences of said action, and, among others, against the said judgment, and therefore are now legally bound to refund him the amount paid to satisfy the said judgment, etc. To this complaint, the defendant R. G. Wilson demurred, on the ground that the complaint did not state facts sufficient to constitute a cause of action. The defendant Belle Wilson demurred on the grounds that the same is ambiguous, unintelligible, and uncertain, in this: No agreement or understanding for indemnity is alleged. It is not alleged that plaintiff paid the judgment by request of defendant

or of necessity. It does not appear that plaintiff committed a tort, jointly with this defendant and others, for which judgment was recovered against plaintiff et al., which judgment he was bound to pay. It does not appear but plaintiff participated with the other persons mentioned as tort feasors, and was liable for his acts, independently of his acts for this defendant. It appears upon the face of the amended complaint that the alleged cause of action is barred under section 196 of the Code of Civil Procedure. The demurrers were severally sustained, and the complaint was dismissed. Plaintiff elected not to amend. From this order and judgment, this appeal is taken. The appellant relies for reversal of the judgment on the point that the complaint states facts sufficient to constitute a cause of action, and that the same was not subject to either of the objections stated in the several demurrers filed. The facts stated in the complaint are admitted by the demurrer. The questions presented by this appeal are admitted to be: First. Does the plaintiff state a case for indemnity within the recognized exceptions to the rule refusing indemnity between joint tort feasors? (No question as to the right of partial contribution is made.) Second. Is the husband, under our law, liable for the torts of a woman committed before marriage, and while she was the wife of another man?

The question presented by the first proposition must be treated in the light of the admitted facts, which are that the plaintiff had no personal interest whatever in the proceeding which was instituted to recover possession of the property against Anna Marks, except as agent for Belle Wilson. He was informed by Belle Wilson, and believed in good faith, that Anna Marks was intruding and trespassing upon the property in question, and erecting a building thereon, in violation of her right. He was requested by Belle Wilson to consult an attorney, and

cause such proceedings to be taken as would prevent Anna Marks from maintaining her tortious possession of the property. He gave full credit to Belle Wilson's statements as to the wrong being done her; and in pursuance of, and in obedience to, her request, and in reliance upon the merits of her claim, he consulted an attorney, and followed that attorney's directions and advice, and commenced a suit before a supreme court commissioner, whose jurisdiction at the time was not defined by law; but he fully believed that said commissioner had jurisdiction to try the case, and judgment was recovered and execution issued and enforced, in his absence, at Belle Wilson's request. Plaintiff simply sought to advance the interests of Belle Wilson, believing in good faith that she had suffered wrong, and that the said proceedings were proper and lawful to protect her rights. His actions and doings in the premises were as the agent and servant, in her interest and for her benefit, believing she had the rights which she asserted, and that the acts done were legal acts, to enable her to enjoy her own property. In the light of these admitted facts, should Belle Wilson's demurrer be sustained?

"It is a general rule that no man can make his own misconduct the ground for an action in his own favor. If he suffers because of his own wrong, the law will not relieve him. But to this rule there are many exceptions; which rest upon reasons at least as forcible as those which support the rule itself. They are of cases where, although the law holds all the parties liable as wrongdoers to the injured party, yet, as between themselves, some of them may not be wrongdoers at all, and their equity to require the others to respond for all the damages may be complete. There are many cases where the wrongs are unintentional, or where the party, by reason of some relation, is made chargeable with the conduct of

others." Cooley, Torts, p. 144; *Butterfield* v. *Cold-Storage Co.*, 11 Utah 195, 39 Pac. 824. Where the act is not known to be unlawful, and where the parties employing the officer are acting in good faith, in the assertion of what they believe to be their right under the law, an agreement to indemnify the officer will be valid, even though it should subsequently appear that they were not justified in doing the acts against the consequences of which the indemnity was given. Mechem, Pub. Off. § 889. Judge Cooley, in his work on Torts (page 145), says: "There are some exceptions to the general rule, which rest upon reasons as forcible as those which support the rule itself. They are of cases where, although the law holds all the parties liable as wrongdoers to the injured party, yet, as between themselves, some of them may not be wrongdoers at all, and their equity to require the others to respond for all the damages may be complete." In *Bailey* v. *Bussing*, 28 Conn. 459, the court said, of the maxim that there is no contribution among wrongdoers, that "it is too much broken in upon at this day to be called with propriety a 'rule of law,' so many are the exceptions to it, as in the case of master and servant, principal and agent, partners, joint operators, carriers, and the like." "This rule," said Judge Story, "is to be understood according to its true sense and meaning, which is where the tort is a known, meditated wrong, and not when the party is acting under the supposition of the innocence and propriety of the act, and the tort is one of construction and inference of law." Story, Partn. § 220. In *Nelson* v. *Cook*, 17 Ill. 448, the court say: "Where one is employed or directed to do or commit a known crime, misdemeanor, trespass, or wrong, and the employé or agent knows it to be such, an express promise of indemnity is void, being against the peace and policy of the law; yet where the question of title to the property

is one of doubt, controversy, or uncertainty, and the act to be done is not an apparent wrong, and the person or agent employed or directed to do the act does not know that it is a wrong or trespass, in such case he may sue and recover indemnity from his employer upon an implied assumption, to save himself harmless for the act." Judge Cooley, in his excellent work on Torts (page 146), says: "If the question of law or fact is in doubt, it is not incompetent for the party suing out process to take upon himself the responsibility, and when he does so, and agrees to indemnify the officer, the agreement may be enforced. This, he says, is upon the same ground that though, as to the party injured, both may be technically in the wrong, it is not so as between the parties themselves." Again, in section 148, this learned writer says: "If he knew the act was illegal, or if the circumstances were such as to render ignorance of the illegality inexcusable, then he will be left by the law where his wrongful action has placed him." The reason given in many books for denying contribution among trespassers is that no right of action can be based upon a violation of the law. When the act is known to be such, or is apparently of that nature, a guilty trespasser places himself without the pale of the law, and a guilty trespasser cannot be allowed to appeal to the law for indemnity. If, however, he be innocent of any illegal purpose, ignorant of the nature of the act, which was apparently honest and proper, and he apparently acted in good faith, with an honest purpose, in what appeared to be right, and, from the nature of the case, could not be presumed to know that he was doing an illegal act, and the tort is one arising from construction or inference of law, and not arising from a known meditated wrong, the rule above stated will be changed with the reason, and he may then have contribution. Where a party makes a bona fide claim to prop-

erty, as in this case, and seeks to obtain possession by legal process from a court that he believes has jurisdiction, he may direct his agent to do those acts necessary to be done in asserting those bona fide rights; and if it is decided that such claim is invalid, or that the court has no jurisdiction in the eye of the law growing out of the mere relation of the perpetration of the wrong, the maxim of the law that there is no contribution among wrongdoers is not applied, and the law will imply an indemnity to such agent who believes as his principal does, for any damages he was made to pay on account of such acts done in pursuance of his principal's directions, within the scope of his instructions and employment.

Cooley, Torts, pp. 145-149; *Bailey* v. *Bussing*, 28 Conn. 459; Story, Partn., § 220; *Nelson* v. *Cook*, 17 Ill. 448; *Betts* v. *Gibbins*, 2 Adol. & E. 57; *Gower* v. *Emery*, 18 Me. 83; Mechem, Pub. Off. § 890; *Coventry* v. *Barton*, 17 Johns. 142; *Acheson* v. *Miller*, 2 Ohio St. 203; *Merrill* v. *City of St. Louis*, 12 Mo. App. 467.

The effect of Belle Wilson's instructions was to employ an attorney, commence the suit, and to follow his advice. The proceedings were those advised and conducted by the attorney employed, and the plaintiff believed the proceedings were regular, and that the commissioner had jurisdiction. Under the facts, the plaintiff was not guilty of an intentional tort, nor of committing a known and meditated wrong. In the case of *Marks v. Culmer*, 6 Utah 429, 24 Pac. 528, the court said: "In *People v. Hills* (Utah) 16 Pac. 405, this court said: 'We entertain no doubt that the commissioner is acting in good faith, as there has been diversity of opinion in the profession and among commissioners as to the construction of the statute under consideration.' This applies equally to the parties and attorneys. This was the first authoritative decision of the question."

The respondent contends that the judgment obtained by Anna Marks is conclusive of the liability of each of the defendants, and that they committed the wrong intending to commit it, or did it under circumstances fairly charging them with intending the consequences that followed. In that we cannot agree. The judgment in *Marks v. Culmer* is only conclusive that all the defendants therein, including the plaintiff, were liable to the injured party. Any other holding would preclude contribution or indemnity in cases of this character. There would be no value to an exception to the general rule that there is no contribution or indemnity between wrongdoers, if the judgment against wrongdoers in favor of the injured party was conclusive that the wrong was intended, and therefore must be a known and meditated tort. Nearly all the cases where indemnity has been allowed were cases in which a judgment had been rendered and paid. We think the admitted facts bring the plaintiff within the exception to the general rule.

For the reasons given, we think the court erred in sustaining the demurrer of Belle Wilson.

The next question is as to whether the husband, under our law, is liable for the torts of a woman committed before marriage, and while she is the wife of another man. When the action for damages was commenced by Anna Marks against Belle Wilson, this plaintiff, and others, for the damages recovered, Belle Wilson was the wife of Harvey K. Tompkins, but was divorced from him in 1889, before judgment was rendered in that case; and it does not appear from the complaint whether or not he was made a party defendant with his wife in that action, wherein judgment was rendered April 30, 1892, although, if we consult the decision in that case, we find that Harvey K. Tompkins was a defendant, and charged as an active party therein. Belle Wilson intermarried with defendant

R. G. Wilson, October 1, 1891, and soon thereafter conveyed to him the property in question, but R. G. Wilson was not made a defendant in that suit; but plaintiff seeks to charge said defendant R. G. Wilson with the payment of a judgment rendered against his wife for a tort committed by her with others, not only before marriage, but while she was the wife of another man, named Harvey K. Tompkins; and claims that while Tompkins, the former husband, was liable for such while his marital relation existed, on the divorce being granted dissolving that marriage, Tompkins was discharged from that liability, and from that time it became and was the liability of the wife until her marriage with defendant Wilson, and that on that event his liability attached, and that this rule is not changed by statute in this state. It is true that at common law the husband was answerable for the wife's debts before marriage, but, if they were not recovered during coverture, he was discharged. As his liability originated in the marriage, so it ceased with it. The reason assigned for this liability is that the husband is entitled to rents, profits, and issues of the wife's real estate during coverture, and to the absolute dominion and control over her personal property in possession. The wife, by entering into the marriage relation, was, at common law, entirely deprived of the use and disposal of her property, and could acquire none by her industry. Her time and personal labor belonged to her husband. Under the common law, he could inflict punishment on her, for he was answerable for her misconduct, and the law left him with this power of restraint and correction, the same as he could correct his children or his apprentices. At common law, the husband had almost absolute control over the person of the wife, as well as her property, and he became the arbiter of her fortune. She was in a condition of complete dependence. She could not contract in her own name, was bound to

obey him, and her legal existence was merged into that of her husband; so that they were termed and considered one in law. As a consequence, he was made liable for her debts contracted before marriage, and for her torts and frauds committed during coverture. If they were done in his presence or by his procurement, he alone was liable; otherwise, both must be jointly guilty. *Bryan v. Doolittle,* 38 Ga. 255; 2 Kent, Comm. 143-149; Schouler, Dom. Rel. 56, 75; *Handy v. Foley,* 121 Mass. 259.

But our statutes have changed this relation and liability. Section 2528, Comp. Laws 1888, read as follows: "All property owned by either spouse before marriage, and that acquired afterwards by purchase, gift, bequest, devise or descent, with the rents, issues, and profits thereof, is the separate property of that spouse by whom the same is so owned or acquired; and separate property owned or acquired as specified above, may be held, managed, controlled, transferred and in any manner disposed of by the spouse so owning or acquiring it, without any limitation or restriction by reason of marriage." Section 2529 reads as follows: "Either spouse may sue or be sued, plead and be impleaded, or defend and be defended at law." Section 3428 provides that all compensation due the wife for her personal services is exempt from execution against her husband. Section 3172 provides that "when a married woman is a party her husband must be joined with her; except, when the action concerns her separate property, or her right or claim to the homestead property, she may sue or be sued alone. When the action is between herself and her husband, she may sue or be sued alone. When she is living separate and apart from her husband, by reason of his desertion of her, or by agreement in writing entered into between them, she may sue or be sued alone." These statutes have relieved married

women from common-law disabilities, and given them
independent power to deal with, hold, and enjoy all their
property, to make contracts, contract property, to sue and
be sued, defend and be defended, and in all respects
places her in the same position with reference to con-
tracts, property, and liability, on the same footing with
other persons; and when a failure to perform a duty
under a contract is in itself a tort, it may be treated as
such against a married woman. The same would be true
of any breach of duty imposed upon a married woman as
owner of property which she owns and controls, the same
as if unmarried. The common-law rule, it will be remem-
bered, which made the husband liable for the wife's torts,
proceeded upon the ground that as the husband suc-
ceeded *jure mariti,* to the entire estate of the wife, real
and personal, and to the right of her earnings, so that she
could not respond in damages for any wrong which she
might commit, it was but right that he should respond for
her, so long as the coverture continued. Such being the
reason of the rule, if a statute intervenes giving the wife,
during coverture, the sole control of all property owned
by her before marriage, and that acquired afterwards by
purchase, gift, bequest, with the rents, issues, and profits
thereof, and the same is the separate property of the wife,
and the same may be held, managed, controlled and trans-
ferred, and in any manner disposed of, by her, without any
limitation or restriction by reason of marriage, with the
right to use and possess the same, thus taking away
entirely the reason of the common-law rule, it would seem,
on principle, that the rule itself ought to cease, though
the statute makes no mention of the husband's liability
for the wife's torts, or her rights to her own personal
services.

Judge Cooley, in his work on Torts (section 118), says:

"In Illinois it has been decided that, under the new stat-
utes, the husband is not liable for a slander of the wife in
which he did not participate, though the statutes on the
subject which were supposed to have changed the com-
mon law were silent as regards the torts, and only pur-
ported to secure to the woman her property, earnings,
and the full control and enjoyment thereof. This is, per-
haps, a sound conclusion. Certainly, the reasons on
which the new legislation proceeds are such as to leave
the wife to respond alone for her torts, for they assume
that she is fully capable of controlling her own actions,
and can and will act independent of her husband." A
similar rule is laid down in Kansas. *Norris* v. *Corkill*, 32
Kan. 409, 4 Pac. 862. So in Michigan, unless her acts are
in some way connected with her husband's authority, or
owing to his fault. *Ricei* v. *Mueller*, 41 Mich. 214, 2 N. W.
23. In Pennsylvania the husband is not lable, under the
act of 1887, for the wife's individual tort. *Kurklence* v.
*Vocht* (Pa. Sup.), 13 Atl. 198. In Illinois, Michigan, and
Iowa the statutes in relation to the rights of married
women have ben held to entitle the wife to recover, for
her own use, a damage suffered for a personal tort. In
*Martin* v. *Robson*, 65 Ill. 132, the court said: "The inten-
tion of the legislature to abrogate the common-law rule
to a great degree, that husband and wife were one person,
and to give to the latter the right to control her own
time, to manage her separate property, and contract with
reference to it, is plainly indicated by these statutes.
While they do not expressly repeal the common-law rule
that the husband is liable for the torts of the wife, they
have made such modifications of his rights and her dis-
abilities as wholly to remove the reason for the liability."
A liability which has for its consideration rights con-
ferred should no longer exist when the consideration has
failed. If the relations of husband and wife have been

so changed as to deprive him of all right to her property, and to the control of her person and her time, every principle of right would be violated to hold him still responsible for her conduct. If she is emancipated, she should be no longer enslaved.

If we could look into the record and decision of this court, we should find that Harvey K. Tompkins was made a joint tort feasor, defendant with his wife, Belle Tompkins, and that a judgment was rendered against him, together with the other defendants, for the tort complained of. This judgment is still standing against him, as an active participant in the tort, notwithstanding the divorce afterwards obtained by his wife; and if he is released from that part of the judgment which attaches to him solely as the husband of Belle, and which is transferred to R. G. Wilson, as his successor to his marital rights with her, then we have two husbands, one succeeding the other, held liable for the torts of the wife. The first husband is held because he jointly committed the tort. The second falls heir to that part of the marital damages thrown off and left him by his wife's divorce before satisfaction rendered. We are aware of some confusion in the authorities as to the right of the husband to his wife's personal services, unless the statute expressly confers the right; but when the statute gives her full control and management of all her property acquired, before and after marriage, with the rents, issues, and profits thereof, together with the right to transfer, manage, and dispose of the same, without any limitation or restriction by reason of marriage, and the right to sue and be sued, to defend and be defended, the same as any other individual, and exempts compensation due her for her person's services from an execution against her husband, then these rights necessarily carry with them the right to such of her time, services, and

earnings as would be necessary to properly attend to, control, and manage property rights and personal interests thus taken from the control of her husband, and conferred upon her by law. What beneficial interest would she acquire by the statute if she is prohibited from using her time in controlling and managing these interests conferred by it? Plainly, but little. It can hardly be contended that the legislature, in enacting these statutes, intended to bestow a right upon her with one hand, and to withdraw that right from her as with the other.

Under the law and the facts in this case, we hold that the defendant R. G. Wilson is not liable for the torts of his wife, committed before he married her, and while she was the wife of another man. We are of the opinion that the demurrer of defendant R. G. Wilson was rightfully sustained. Comp. Laws 1888, §§ 2528, 2529, 3172; *Norris* v. *Corkill*, 32 Kan. 409, 4 Pac. 862; *Merrill* v. *City of St. Louis*, 12 Mo. App. 466; 2 Bac. Abr. 61; *Martin* v. *Robson*, 65 Ill. 129; Cooley, Torts, 118; 2 Bish. Mar. Wom. § 24, and note; *Marks* v. *Culmer*, 6 Utah 419, 24 Pac. 528; *Warr* v. *Honeck* (Utah), 29 Pac. 1117; *Ricci* v. *Mueller*, 41 Mich. 214.

In Belle Wilson's demurrer is stated, as the last ground of demurrer, "that the action is barred by subdivision 1 of section 196 of the Code of Civil Procedure" (general section 3145), which limits the right of action to two years. The judgment was rendered April 30, 1892. Plaintiff paid it July 1, 1893, and brought this action June 15, 1894. This was an action for indemnity against actual damages, and the party indemnified had no cause of action until he was damaged, and the statute of limitations commences to run from the time the judgment was paid. *Oaks* v. *Scheifferly*, 74 Cal. 478, 16 Pac. 252; *Wicker* v. *Hoppock*, 6 Wall. 96.

The order and judgment of the trial court sustaining

the demurrer of R. G. Wilson is affirmed, and the order and judgment sustaining the demurrer of defendant Belle Wilson is set aside and vacated, with instructions to the court below to enter such order accordingly. Plaintiff is entitled to recover costs against Belle Wilson, and R. G. Wilson is entitled to recover costs against the plaintiff.

ZANE, C. J., and BARTCH, J., concur.