[No. 5368.]
[No. 3017 C. A.]

## SCHULER ET AL. v. HENRY.

**Husband and Wife—Torts Committed by Wife During Coverture—Liability of Husband.**

A husband is not liable for the tort of his wife, committed during coverture and without his presence, and in which he in no manner participated.—P. 375.

*Appeal from the County Court of San Miguel County.*

*Hon. J. M. Wardlaw, Judge.*

Action by L. Henry against L. Schuler, Mrs. L. Schuler, G. C. Collins, Mrs. G. C. Collins, Joe Gontier and Mrs. Joe Gontier. From a judgment for plaintiff, defendants appeal.

*Reversed as to certain of the defendants, and affirmed as to others.*

Decision *en banc,* Mr. JUSTICE GABBERT and Mr. JUSTICE MAXWELL dissenting, and Mr. JUSTICE HELM not participating.

Mr. L. C. KINIKIN, for appellants.

Mr. H. M. HOGG and Mr. C. L. WATSON, for appellee.

CHIEF JUSTICE STEELE delivered the opinion of the court:

The record presented requires us to determine this question: Is a husband liable for the tort of his wife, committed during coverture and without his presence, and in which he in no manner participated?

The rule of the common law which makes the husband liable for the torts of his wife has not been expressly repealed, and unless it has been repealed by implication, the question must be answered in the affirmative. In determining whether the rule of the common law has been abrogated by the enactments concerning married women or is still in force, it will be necessary to briefly consider the status of a married woman at common law and her status under the statutes of this state.

At common law the husband and wife were considered as one person, as having but one will between them—that seated in the husband as the head and governor of the family. Therefore, the law gives him the same right over real estate accruing to the wife during coverture as if she were seized of it before marriage. So of chattels real accruing to the wife. It also gives him an absolute power over any personal estate or interest accruing to the wife by gift, devise or her labor.—Bacon's Abridgment, Title Baron and Femme, D.

"The husband hath, by law, power and dominion over his wife, and may keep her by force within the bounds of duty, and may beat her, but not in a violent or cruel manner."—*Idem*, B.

The wife's identity was completely merged in that of her husband. With but few limitations, he had the control of her person, her property, her children, her labor.

"The legal theory is, that marriage makes the husband and wife one person, and that person is the husband, that there may be an indissoluble union of interest between the parties."—*State v. Burlingham*, 15 Me. 104.

As compensation for depriving her of a legal existence, and depriving her of the enjoyment of her property, and of being under the dominion of her husband, the wife had the benefit of her legal nonentity, and she was presumed to have acted under the direction of her husband, and her misdemeanors and her trespasses were to be looked upon, not as arising from the promptings of her own mind or will, but as the result of the overpowering commands or coercion of him whom she had promised to obey.—*Marshall v. Oakes*, 51 Me. 310.

"The common reason assigned for this legal disfranchisement of the wife is, that there may be an indissoluble union of interest between the parties. In other words, lest the wife might be sometimes tempted to assert rights in opposition to her husband, the law humanely divests her of rights."—Walker's American Law, 246.

By our statute there is a complete change in all this; and the Colorado wife is not the wife as at common law, but is vested with absolute control and dominion over her property and her person. She may sue and be sued as though she were sole; she may engage in business on her own account; she may sell and convey her property without the consent of her husband; her property is not liable for her husband's debts; she is entitled to the earnings of her labor; she may execute any bond, bill or promissory note, and may contract debts in her own name; and in every suit or proceeding, when judgment is rendered against her, it may be enforced by execution against her. She may dispose of her

property by will, and the law places both husband and wife upon the same level with reference to the disposition of property by will; the provisions of the statute are slightly different, but the effect is the same, and neither can dispose of more than one-half of the property without the consent of the other. Either husband or wife may incur indebtedness for the family expenses, and for such indebtedness either or both will be liable. The husband is not liable for the debts of his wife contracted before marriage, except to the extent that he may have received property from her. · The right of the husband to beat his wife or to imprison her to enforce obedience to his will is no longer recognized as a right by our race, and such treatment of the wife is practiced only by those of brutish instincts. The husband is no longer entitled to the exclusive possession of the children. Although there exist certain reciprocal obligations and duties growing out of the marital relation, whatever they are, they are not based upon the supposed vassalage of the wife or the imagined lordliness of the husband. Thus it will be seen that the wife in Colorado has been wholly emancipated "from the condition of thraldom in which she was placed at common law." And, as stated by Chief Justice Thatcher in *Wells v. Caywood*, 3 Colo. 494: "The wife in Colorado is the wife under our statute and not the wife at common law, and by our statutes must her rights be determined; the common law affecting her rights, as we shall presently see, having been swept away."

That many of the states still hold the husband liable jointly with the wife for torts committed by her without his presence, must be conceded, and perhaps the greater number that have passed upon the question have so held; but, in no one of the states so holding is the wife so completely emancipated

from the dominion of her husband as in this state, and, as a rule, the courts find in their statutes some enactment showing that the legislature intended to not repeal the common law upon the subject. Thus, in the states of Pennsylvania and Indiana the statutes provide that where a judgment is rendered against the husband and wife for the tort of the wife, execution shall first be levied upon the separate property of the wife, if she have any.—*Quick v. Miller,* 103 Pa. St. 67; *Choen v. Porter,* 66 Ind. 194.

In California and Texas the husband and wife own community property, the husband being the head of the community, and the statutes of these states are not nearly so broad as ours. In Texas the court recognizes the justness of the Illinois decisions, and states that the Illinois statutes "give to the wife much more extended powers in reference to her own action and services and property rights than the statutes of this state." In California, although the court seems inclined to the doctrine that the husband should be held for some of the reasons assigned in other jurisdictions, still it assigns as a sufficient reason for holding the husband liable that the wife cannot be sued under the California statutes without her husband for a tort that does not concern her separate estate, and that she can be sued only when the action concerns her separate property or her claim to the homestead, when the action is between herself and husband, or when she is living in separation from her husband by desertion or under an agreement in writing.—*Zeliff v. Jennings,* 61 Texas 458; *Henley v. Wilson,* 137 Cal. 273.

In Minnesota the court finds in the statute a provision which seems to declare by negative words that the husband is liable for the torts of the wife. The court says: "Then, as if to emphasize the matter and place the legislative intention beyond all doubt,

it was provided (section 5536) that nothing in the act should be considered as exempting a husband from liability for torts committed by his wife.—*Morgan v. Kennedy,* 62 Minn. 348.

In Maine, Massachusetts, North Carolina and South Carolina the courts do not discuss the question on the lines adopted by the courts of other states, but content themselves with the bare announcement of the rule at common law.—*Ferguson v. Brooks,* 67 Me. 251; *Hill v. Duncan,* 110 Mass. 238; *Presnell v. Moore et ux.,* 120 N. C. 390; *Henderson v. Wendler,* 39 S. C. 555.

In New York the statute provides that a married woman may sue or be sued in all matters having relation to her separate estate.—*Fitzgerald v. Quann,* 109 N. Y. 441.

In Missouri the court holds that the statute providing "that the husband's property, except such as may be acquired from the wife, shall be exempt from all debts and liabilities contracted and incurred before marriage," relaxed the common-law rule to the extent of limiting the husband's liability for his wife's antenuptial debts and torts to property received and acquired by him from his wife; and on the familiar principle of *expressio unius, exclusio alterius,* left the liability for her torts, committed during coverture, just as they existed at common law.—*Taylor v. Pullen,* 152 Mo. 434.

In Iowa the court holds the husband liable for the torts of the wife, and states: "But, as he was liable at common law for the torts of his wife committed after marriage, and the statute exempts him from his liability for her *debts* only, it follows that his liability for such torts continues as at common law."—*McElfresh v. Kirkendall,* 36 Iowa 224.

That the husband is not liable because of his supposed neglect of duty in not controlling his wife

must be apparent when we consider that the rule that makes the husband liable for the torts of the wife committed during coverture requires that a recovery must be had during coverture, and that if the wife dies before judgment the suit abates, and that if they are separated by divorce, or if the husband dies, the action survives against the wife. For, if the rule were based upon the failure of the husband to exercise his right of control over his wife's conduct, the action against him should not abate upon the wife's death, nor survive against her upon divorce. In speaking of this subject, Rapallo, J., in *Kowing v. Manly et al.*, 49 N. Y., at page 201, says: "It is claimed, however, on behalf of the respondent, that the husband being liable for the tort of his wife in fraudulently obtaining the bonds, he cannot maintain an action founded on such tort. The unsoundness of this position consists in the assumption that the liability of the husband to be joined with his wife in an action for her wrong is equivalent to a guilty participation by him in that wrong, or is founded upon the idea that her act is considered as his. Such is not the nature of his liability. He is not joined as a defendant on the ground that her guilt is imputed to him, but because, so long as the marital relation continues, the wife is incapable of being sued alone *(Capel v. Powell*, C. B. [N. S.] 744); and his liability continues only so long as the relation of marriage subsists. In trover against husband and wife for goods converted by the wife, the reason assigned for holding a plea that the defendants were not guilty, to be bad, was that, 'no tort is supposed in the husband, and the issue should be that she is not guilty.' "

Until 1874 (Laws of 1874, 185) married women were under disability, and could not sue or be sued except in matters relating to their separate estate. The statute up to that time also provided that when

judgment was rendered against the husband and wife for the tort of the wife, execution should first be levied on the lands of the wife, if she had any. And it is a striking coincidence—if, indeed, the legislature was not advised that the removal of the wife's disability would remove the liability of the husband for the torts of the wife—that the legislature should, in the same act, remove the disability of married women and repeal the section providing that in actions for tort against husband and wife, execution shall first be levied upon the lands of the wife. Indeed, it might fairly be inferred that the legislature intended by the act of 1874 to relieve the husband from liability for his wife's torts by removing the wife's disability.

We might rest here and reverse the judgment for the reasons given, but we prefer to determine the case upon additional and broader grounds. The courts and text writers do not agree as to what constitutes the basis for the rule at common law that makes the husband responsible for the torts committed by his wife. Some of them state that it is because the husband at common law had the power of correcting his wife and that he was, therefore, responsible for her conduct; others that as he had the control of her property, he should be answerable for her wrongs; still others that, as she could not be sued alone, the injured party would be without redress unless the husband were held liable with her, and this appears to be the theory most frequently advanced, and is regarded by Tyler, in his work on Infancy and Coverture, as the controlling reason for holding the husband liable. He says: "But at common law, the husband is answerable to third persons for acts and injuries done by his wife when they afford ground for a civil action, even though done without his knowledge or instrumentality in any

way; and this upon the ground that the legal existence of the wife during marriage is incorporated or consolidated into that of the husband, and if the husband was protected from responsibility, as the wife could not be sued alone in such a case, the injured party would be without redress; the husband's liability results from the incapacity of the wife to be sued without him.''—Tyler on Infancy and Coverture, 380.

We can find no just reason for holding the husband liable for the torts committed by his wife unless committed by his direction. He cannot be held upon the common-law theory of unity of husband and wife. The unity has been severed, and we have grafted into our system of jurisprudence the benign principle of the civil law, whereunder ''husband and wife are considered as two distinct persons, and may have separate estates, contracts, debts and injuries.''—*Wells v. Caywood*, 3 Colo. 487. He cannot be held upon the ground that she cannot be held without him, for she can be sued in all matters as if she were sole. He cannot be held upon the ground that he has control of her property and should respond in damages with it, because he has no control of her property, and she may do with it as she pleases. He cannot be held upon the theory that he has the power to restrain her, because he has no such legal power. As he has no legal control over her person or her property, he should not be held for her wrongs. In fact, not one of the reasons assigned by courts and text writers for holding the husband liable exists in this state; and, as the reason for holding the husband no longer prevails, he should not be required to respond in damages for the torts of his wife.

It is said by the court in *Martin v. Robson:* ''A liability which has for its consideration rights conferred, should no longer exist when the considera-

tion has failed. If the relations of husband and wife have been so changed as to deprive him of all right to her property, and to the control of her person and her time, every principle of right would be violated, to hold him still responsible for her conduct. If she is emancipated, he should no longer be enslaved. * * * So long as the husband was entitled to the property of the wife and to her industry, so long as he had power to direct and control her, and thus prevent her from the commission of torts, there was some reason for his liability. The reason has ceased. The ancient landmarks are gone. The maxims and authorities and adjudications of the past have faded away. The foundations hitherto deemed so essential for the preservation of the nuptial contract, and the maintenance of the marriage relation, are crumbling. The unity of husband and wife has been severed. They are now distinct persons, and may have separate legal estates, contracts, debts and injuries. * * * So diverse are the rights and interests, the duties, obligations and disabilities of husband and wife now, that it would be most unreasonable to hold him still liable for the torts committed without his presence and without his consent or approbation. * * * They are not one, as heretofore. They are one in name, and are bound by solemn contract, sanctioned by both divine and human law, to mutual respect; should be of the same household, and one in love and affection. But a line has been drawn between them, distinct and ineffaceable, except by legislative power. His legal supremacy is gone, and the scepter has departed from him."—*Martin v. Robson*, 65 Ill. 129.

These words truly state the legal relationship of husband and wife as it exists in Colorado. Since they were written, the statutes of this state have been

broadened, until now there is scarcely a semblance of the common-law reciprocal liabilities and duties remaining. The decision in the case of *Martin v. Robson* has been followed by the cases of *Norris v. Corkill,* 32 Kan. 409; *Harris v. Webster,* 58 N. H. 481; *Lane and Wife v. Bryant,* 100 Ky. 138; *Culmer v. Wilson,* 13 Utah 129; *Goken v. Dallugge,* 72 Neb. 16. These decisions are based upon the principle that where the reason, which is the spirit and soul of the law, fails, the law fails. We regard them as logical, forceful and just, and we desire to be in line with them.

The other assignments of error we regard as being without merit, and we shall not discuss them.

The judgment will be reversed as to the appellants L. Schuler, G. C. Collins and Joe Gontier, and affirmed as to the other appellants.

Decision *en banc.*

Mr. JUSTICE GABBERT and Mr. JUSTICE MAXWELL dissent.

Mr. JUSTICE HELM did not participate.

———————

Mr. JUSTICE MAXWELL, with whom concurred Mr. JUSTICE GABBERT, dissenting:

Mr. Justice Gabbert and myself dissent from the foregoing opinion, and on account of some expressions found in the opinion of the Chief Justice, deem it due to ourselves to state the reasons for our dissent.

It is conceded that the common law which makes the husband liable for the torts of his wife has not been expressly repealed, and that if such repeal has taken place, it is by implication.

By § 4184, Mills' Ann. Stats., the common law of England, so far as the same is applicable and of a general nature, with certain exceptions, was

adopted by the Territorial Legislature of 1861, and it is provided that it "shall be the rule of decision, and shall be considered of full force until repealed by legislative authority."

It has been repeatedly held by this court that statutes in derogation of the common law shall be strictly construed, and in considering repeals of the common law by implication, the same rules should be applied as are applied to statutes, for the reason that the common law is made a part of our jurisprudence by statutory enactment.

We believe that many, if not all, of the arguments of the learned Chief Justice are subject to the criticism contained in the following excerpt from the dissenting opinion of Mr. Justice Campbell in *Ins. Co. v. Ross-Lewin*, 24 Colo. 43-56:

"But these and similar arguments are more properly addressed to the legislative department, as reasons for changing a long recognized common-law rule, and should not be potential with courts as a reason why they should encroach upon legislative functions."

To determine the question presented, an examination of statutory enactments from the days of territorial legislation is necessary, keeping in mind the well-settled rules of construction, that the common law will not be held to be abrogated unless the language used in the statute requires it; that an intent to change the common law will not be presumed from doubtful statutory provisions; that statutes must be construed as a whole, and where it is possible, effect must be given every section and every word, and that statutes must be so construed as to carry out the intent of the legislators.

The sections of the statutes relied upon for an affirmative answer to this question are, 2 Mills' Ann. Stats., sections 3007, 3009, 3012, 3020 and 3021.

By section 3007 a married woman retains as her separate estate all property, real and personal, which she may own at the time of her marriage, together with the rents, issues and profits thereof, and all property which she may acquire in any manner during the marital relation, and the same shall not be subject to the disposal of her husband or liable for his debts.

By section 3009 a married woman may sue or be sued in all matters relating to her property, person or reputation, as if she were sole.

By section 3012 a married woman may carry on any trade or business and perform any labor or services on her sole and separate account; may sue or be sued as if sole in relation thereto, and the proceeds of such property may be taken on execution against her.

Sections 3007, 3009 and 3012 are found in "An act to protect the rights of married women," enacted at the first session of the legislature of the territory, November 7th, 1861.—Territorial Laws 1861, 152.

This act embodied eighteen sections.

Section 13 of the act of 1861 (2 Mills' Ann. Stats., 3014) is: "In all marriages hereafter contracted, the husband shall be liable for the debts and the liabilities of the wife contracted before marriage, to the extent of the real and personal property he may receive with or through her, or derive from the sale or rent of her lands, and no further."

The use of the words "debts" and "liabilities" in this section is significant.

A "debt" is a sum of money due by certain and express agreement.—3 Blackstone Com. 154.

A "liability" is responsibility; the state of one who is bound in law and justice to do something which may be enforced by action. This liability may

arise from contracts either express or implied, or in consequence of torts committed.—Bouvier's Law Dict.

We must conclude that the legislature recognized this distinction in the use of the two words, and the statute cannot be fairly construed without giving to them their full force and effect.

The supreme court of Missouri in *Nichols v. Nichols,* 147 Mo. 387, in construing a section of the Missouri statute, in effect the same as the one last above quoted, at page 408, said:

"While the first three sections of the statute are devoted to this subject—the rights and liabilities of the wife—they bear upon their face evidence that the legislature was not unmindful of the liabilities of the husband at common law, and the effect that this legislation would have upon those liabilities, and in the last section limited and defined that effect in the following language: 'Sec. 6870. The husband's property, except such as may be acquired from the wife, shall be exempt from all debts and *liabilities* contracted or incurred by his wife before their marriage.'

"Here, upon the familiar principle of *expressio unius, exclusio alterius,* is a positive expression of the legislative intent as to the extent to which this legislation should go in exempting the husband from the liabilities of the wife. Before this enactment he was liable for her torts committed before marriage, as well as during coverture. Thereafter he was to be liable for her torts committed before marriage only to the extent of the property acquired from the wife. If we keep within the legislative intent discovered by the usual rules of interpretation, as is our duty to do, how can we hold that the husband, by virtue of this statute, is not liable for the torts of the wife committed during coverture, as he was before its enactment? In order to do so we would have to entirely

ignore this section of the statute, as counsel do in
their argument, disregard the legislative intent so far
as it can be discovered from the terms of the statutes,
and base our ruling on the assumption that the rea-
sons for the existence of this liability at common law
were wiped out by the enactment; therefore, the lia-
bility must go with it; this assumption being at the
same time unwarranted.''

Under the above authority, and upon principle,
it seems to us clear that the legislature understood
that the common-law liability of the husband was ex-
istent as to the debts and liabilities of the wife con-
tracted before and after marriage, and that it was the
intention only of the law-makers, by this section, to
limit the liability of the husband for debts and liabil-
ities contracted before marriage, as therein indicated,
without in anywise affecting his liability for her
debts (except debts relating to her separate property,
business or earnings) and liabilities contracted *after*
marriage.

This conclusion is fortified by section 16 of the
act of 1861, which is:

''That when any judgment is rendered against
any husband and wife for the tort of the wife, execu-
tion on such judgment shall first be levied on the
land of such wife, if she have any.''

Here is a clear recognition by the legislature that
the common-law rule prevailed, and that it would
prevail notwithstanding the enactment of the preced-
ing sections of the statute, showing conclusively, as
we think, that it was not the intention of the legis-
lature to abrogate the common law by the enactment
of the sections upon which counsel for appellants
relied (3007-3009-3012 Mills' Ann. Stats.), on the
other hand expressly recognizing the existence of the
common-law rule.

The last above quoted section was repealed by "An Act Concerning Married Women," Sess. Laws 1874, 185. The only effect of this repeal was to permit a party in whose favor a judgment had been rendered against husband and wife for the tort of the wife, to proceed immediately by execution against the property of the husband without first levying upon the land of the wife.

Thus it seems beyond question that it was not only not the intention of the legislators who enacted the sections of the statute now known as sections 3007, 3009 and 3012, 2 Mills' Ann. Stats., to abrogate the common-law rule, but they, in express terms, recognized it.

It remains to determine whether legislation subsequent to that above referred to, abrogates the rule.

Section 3020 is: "A married woman may sue and be sued in all matters the same as if she were sole."

This section *seems* to be simply an attempt to enlarge the rights and liabilities of married women conferred by section 3009, *supra*. Upon a close analysis, however, it will be apparent that this section in nowise enlarged the rights or liabilities of married women, as the expression "all matters" does not include any matters which are not included in "all matters having relation to her property, person or reputation."

What rights or liabilities can any person have which do not relate to person, property or reputation? Certainly none of which earthly courts have jurisdiction.

In discussing the subject "Actions against husband and wife," Mr. Pomeroy says:

"It is the settled rule in all the states which have adopted the reformed system of procedure, that, in actions to recover damages for all torts    *    *    *

done by the wife personally, and not done merely by or by the use of her separate property, the common-law principle is unaltered, and the husband and wife must be joined as codefendants. The principle thus stated assumes that the wife acted voluntarily.   *   *   *

"If, however, the tort is not committed by the wife personally, but is done by means of her separate property, or in the use thereof, or under color or claim of ownership of her separate property, the action should be brought against her individually, without joining the husband as a codefendant, in all those states whose statutes permit a married woman to be sued alone in respect of all matters which concern her separate estate."—Pomeroy's Remedies and Remedial Rights, §§ 320, 321.

Section 3021, Mills' Ann. Stats., is: "Any woman, while married, may contract debts in her own name and upon her own credit, and may execute promissory notes, bonds, bills of exchange, and other instruments in writing, and may enter into any contract the same as if she were sole; and, in all cases where any suit or suits, or other legal proceedings shall be instituted against her, and any judgment, decree or order therein shall be rendered or pronounced against her, the same may be enforced by execution or other process against her, the same as if she were sole."

There is nothing whatever in this section which, by any possibility, can be construed as relieving the husband from the common-law liability for torts of his wife committed during coverture; it simply extends the powers and responsibilities of the wife.

In discussing "An Act Concerning Married Women" (Laws 1874, page 183), and referring particularly to the two foregoing sections, Chief Justice Thatcher, 3 Colo. 484, on page 493, said:

"This is, essentially, an enabling statute, and as such must be liberally construed to effectuate the purpose of its enactment. It confers, in terms, enlarged rights and powers upon married women. In contemplation of this statute, whatever may be the actual fact, a *femme covert* is no longer *sub potestate viri* in respect to the acquisition, enjoyment and disposition of real and personal property. This statute asserts her individuality, and emancipates her, in the respects within its purview, from the condition of thraldom in which she was placed by the common law. The legal theoretical unity of husband and wife is severed so far as is necessary to carry out the declared will of the law-making power. With her own property she, as any other individual who is *sui juris,* can do what she will, without reference to any restraints or disabilities of coverture. Whatever incidents, privileges and profits attach to the dominion of property, when exercised by others, attach to it in her hands."

In *Loveland v. Kearney,* 14 Colo. App. 463, at page 466, it is said:

"In this state, in respect to matters of business, a married woman is upon the same footing with a *femme sole.* She may engage in business, acquire property and dispose of it, independently of her husband, and unbound by any of the restraints or disabilities of coverture.—*Wells v. Caywood,* 3 Colo. 487; *Scott v. Mills,* 7 Colo. App. 155."

We believe that the most which can be claimed for the legislation of this state, under discussion, is fully expressed by what was said by Chief Justice Thatcher, above quoted, and except as qualified by section 3014, Mills' Ann. Stats., such legislation does not in any manner emancipate the husband from his common-law liability to respond in damages for the torts of his wife.

The authorities followed in the majority opinion are: *Martin v. Robson,* 65 Ill. 129; *Norris v. Corkill,* 32 Kan. 409; *Lane v. Bryant,* 100 Ky. 138; *Culmer v. Wilson,* 13 Utah 147.

*Martin v. Robson, supra,* is the leading case in support of the proposition that the common law has been abrogated by legislation which "gives to the wife, during coverture, the sole control of her separate estate and property acquired in good faith from any person other than her husband, and her own earnings for labor performed for any person other than her husband or minor children, with the right to use and possess the property and earnings, free from the control or interference of her husband."

This decision was rendered by the supreme court of Illinois upon the statutes of 1861 and 1869, each of which statutes contained one section only, and did not contain provisions along the line of the provisions contained in sections 13 and 16 of the act of 1861, or anything similar thereto, which we have shown were a clear legislative recognition of the common-law rule.

The majority opinion of the court in *Martin v. Robson, supra,* which is relied upon by counsel for appellants in the case at bar, was dissented from by Justices Sheldon, Scott and Breese. At the session of the legislature of Illinois immediately following the announcement of the opinion, the following was enacted:

"For all civil injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be responsible therefor, except in cases where he would be jointly responsible with her, if the marriage did not exist."—Ill. Rev. Stats., 1874, page 576.

This act would seem to indicate that the law-making power of Illinois was not entirely satisfied with the soundness of the conclusion arrived at by a bare majority of the court, and deemed it expedient to put the question at rest by legislative enactment.

*Culmer v. Wilson, supra,* cited by counsel, decided that the husband was not liable for the torts of his wife *committed before he married her and while she was the wife of another man,* and is manifestly not in point.

All of the authorities cited are cases in jurisdictions where the common law has not been repealed by direct legislation, the repeal by implication being declared by the courts. The argument adopted in *Martin v. Robson, supra,* has been substantially adopted by the courts so ruling, and is the argument adduced here in support of appellant's contention.

It is thus stated in *Martin v. Robson,* at page 133:

"A liability which has for its consideration rights conferred, should no longer exist when the consideration has failed. If the relations of husband and wife have been so changed as to deprive him of all right to her property, and to the control of her person and her time, every principle of right would be violated to hold him still responsible for her conduct. If she is emancipated, he should no longer be enslaved."

And again at page 137:

"So long as the husband was entitled to the property of the wife and to her industry, so long as he has power to direct and control her, and thus prevent her from the commission of torts, there was some reason for his liability. The reason has ceased. The ancient landmarks are gone. The maxims and authorities and adjudications of the past have faded away. The foundations hitherto deemed so essen-

tial for the preservation of the nuptial contract, and the maintenance of the marriage relation, are crumbling. The unity of husband and wife has been severed. They are now distinct persons, and may have separate legal estates, contracts, debts and injuries.''

In other words, the maxim *cessant ratione legis, et ipea lex,* is invoked and relied upon.

This argument is based upon the erroneous assumption that there was *one reason only* for the rule at common law. It is beyond dispute that other reasons than the one stated and relied on for the rule at common law existed and now exist. In the dissenting opinion of Mr. Justice Sheldon *(Martin v. Robson)*, at page 140, it is said: '

''The assumed foundation of the rule is not all removed yet. A part of it, to wit, that whatever accrues to the wife by her labor belongs to the husband, for the most part, yet remains.    *    *    *

''Of this description chiefly are the services of married women; any other are exceptional.

''As to the husband's right to the services of his wife being one of the assigned reasons of his liability for her acts and obligations, see 2 Bac. Abr. 33, title Baron & Femme (F); Tyler on Infancy and Coverture, 333.    *    *    *

''Because the legislature has seen fit to interfere with this unity of person, so far as to allow the wife the enjoyment of her separate property, and to have her earnings to a limited extent, it does not follow that the courts should annul it in any other particulars.    *    *    *

''As the acquisitions of the joint industry of husband and wife belong to the former, we may expect it to be the exception, rather than the rule, where there will be found separate estate belonging to the wife, to be reached by execution.

"This will make the remedy, by recovery of damages by suit against the wife alone, of little worth.

"Thus the abrogation of the law in question leaves the party who may receive injuries at the hands of a married woman practically remediless. It will so be that she, in most instances, may commit private wrongs with legal impunity, and wives will be made, as it were, licensed wrongdoers. A weakening effect will be produced in the respect of family government, which is a powerful aid to that of the state, in the maintenance of civil order."

In *D. & R. G. R. R. Co. v. Young,* 30 Colo. 349, at page 351, it is said:

"While these provisions (§§ 3009, 3012 and 3020, 2 Mills' Ann. Stats.) have relieved a married woman from many of the disabilities imposed under the common law, they have not abrogated all the common-law relations of husband and wife. She is still required to perform the usual and ordinary household duties. For services of this character she is not entitled to any monetary compensation from her husband. Her services on this account belong to him."

In *Henley v. Wilson,* 137 Cal. 273, at page 274, it is said:

"But what all the reasons for the rule were originally is not now so easy to determine, and accordingly it was said by Mr. Justice Field, in *Van Maren v. Johnson,* 15 Cal. 312: 'It matters not what was the origin of the common-law doctrine, its rule is settled and exists independently of the grounds on which it originally rested.' * * * It was said by the supreme court of Texas in *Zeliff v. Jennings,* 61 Tex. 458, that the doctrine 'rests, perhaps, mainly upon the supposition that her acts are the result of the superior will and influence of the husband. Ow-

ing to the intimate relation of husband and wife, and to the nature of the control given him by law and social usage over her conduct and actions, it would be difficult, if not impossible, for the courts to determine when she had acted at her own instance, and when she was guided by his dictation.' And it may be added, in a case where the wife has no separate estate, if the husband cannot be held, the aggrieved person will have no redress, and upon the wife there will be no restraint of pecuniary responsibility. If so disposed, she could, with impunity, blast the lives of her neighbors by most grievous slanders. Nor is it true, in the absolute sense, that she has no interest in the estate of her husband. She is entitled to a support out of it, and to be maintained in a degree of comfort proportionate to his wealth. To make his fortune liable for her torts may directly affect her. It may diminish her comfort and style of living.''

In *Nichols v. Nichols,* 147 Mo. 387, at page 409, it is said:

''For, although the absorption of the wife's property by the husband, permitted by the common law, may have been the reason, and a sufficient one, for holding him liable for her torts committed before marriage, his liability for her torts committed during coverture, while supported by that reason also, had another, a broader and more enduring foundation in the absolute unity of husband and wife in the marital relation. As contemplated by that law, they were two persons, made one by marriage, one entity—the family—whose head was the husband, with power to control and direct the conduct and action of its members, and with a corresponding liability to society for such conduct and action. This basis, this reason, for the liability of the husband for the torts of the wife committed during coverture

remain intact of legislative interference thus far in this. state, and so long as it does remain there is reason for the liability, whether sufficient or not it is for the legislature, and not for the courts, to say, and we cannot assume that this liability for the protection of society has ceased because a reason therefor no longer exists. When, by legislative enactment, marriage in this state becomes a mere civil contract—a mere community of interest based on property—then the reason for the rule may cease to exist; but so long as it remains, the sacred relation contemplated in the common, as in the Divine, law, a reason therefor must remain."

In *Taylor v. Pullen*, 152 Mo. 434, at page 438, it is said:

"While it is true that one of the supposed reasons for the rule which required a husband to be joined with his wife in an action for her torts has ceased because he no longer acquires her property by virtue of the marriage in this state, all lawyers must admit that so far no writer or court has as yet furnished satisfactorily all the reasons which may have influenced the adoption of the rule at common law, and until they are produced, certainly the courts cannot declare that all the reasons have ceased and thus abolish the rule by judicial decision."

Upon examination it is found that in Illinois, Kansas, Kentucky and Utah, no statutes similar to sections 13 and 16 of the act of 1861 were ever in force, and it might be well said that decisions of the courts of those states should not be controlling, or even persuasive, in deciding the question here presented.

The majority opinion not only follows the lead of those states, but completely ignores the force and effect of those sections of the statute, as indicative

of the intention of the legislature in the enactment
of the other sections of the statute here relied on,
thus violating the well-established rule that statutes
must be construed as a whole, and that force and
effect must be given to every section of a statute,
where that is possible to be done.

Under the statutory enactments discussed, we
do not believe there has been such a change in the
relation between husband and wife, except as to the
separate property of the wife, as would justify this
court in declaring, in the absence of express, posi-
tive legislation upon the subject, that the rule of
common law has been abrogated. To so decide
would be judicial legislation, against which there is
at the present time much well-founded complaint.

The argument of the learned Chief Justice, to
establish the fact that the husband in Colorado has
no control over the wife and that this reason for the
existence of the common law has ceased, is plausible,
but specious to the extreme.

The power of disposition of property by will,
by husband and wife, referred to in the majority
opinion, was established by the first territorial legis-
lature in 1861, substantially as it exists to-day, and
is a part of the same act of which sections 3007, 3009
and 3012, Mills' Ann. Stats., are a part. We do not
appreciate the bearing of such provisions of the law
upon the question here presented, nor do we appre-
ciate, in this connection, the relevancy of the act
of 1891 (Sess. Laws 1891, 238) making family ex-
penses chargeable upon the property of both hus-
band and wife.

No one of common information and ordinary in-
telligence disputes the proposition that "the right of
the husband to beat his wife or to imprison her to
enforce obedience to his will is no longer recognized
as a right by our race."

We go further, and say that such rights, if they ever existed, were never practiced or enforced by civilized men, but only by those of "brutish instincts."

But it does not follow that the husband in Colorado, or elsewhere, has no control over the actions of the wife. His control, implanted by the laws of nature, and the Divine law, exercised through love and affection, recognized, respected and revered by both parties to the marital relation, is more potent and, it is to be hoped, will ever be more potent, than any right recognized by any law, common or statutory, to enforce obedience by force or fear.

One unfamiliar with the conditions existing in Colorado might be led by the majority opinion to believe that nothing remained to the husband but the name.

In this state, as elsewhere, the domicile of the husband is the domicile of the wife; the domestic services of the wife belong to the husband; except in extreme cases, he is entitled to the custody of the children; and, in the fullest sense of the word, he is the head of the family and the household, and exercises over the conduct of every member of the family the same influence and control which is exercised elsewhere, and in this respect the reason of the common law, here under discussion, exists as potentially to-day as it ever did, here or elsewhere.

The overwhelming weight of authority is opposed to the conclusion arrived at by the majority of our associates, as is shown by the following citations: *Henley v. Wilson,* 137 Cal. 273; *Zeliff v. Jennings,* 61 Tex. 458; *Choen v. Porter,* 66 Ind. 194; *Ferguson v. Brooks,* 67 Me. 251; *Morgan v. Kennedy,* 62 Minn. 348; *Nichols v. Nichols,* 147 Mo. 387; *Fitzgerald v. Quann,* 109 N. Y. 441; *Holtz v. Dick,* 42 Ohio State 23; *McElfresh v. Kirkendall,* 36 Iowa

224; *Henderson v. Wendler*, 39 S. C. 555; *Presnell v. Moore*, 120 N. C. 390.

We do not believe that the distinctions stated by the learned Chief Justice to many of the above cases, are justified by the facts as found in the cases distinguished.

For these reasons we dissent, and think the judgment below should be affirmed.