[No. 3514.]

DEUTSCH, ET ALS., v. ROHLFING, ET ALS.

1. PLEADING—*Waiver of Demurrer by Amendment.* The amendment of an answer after a demurrer sustained thereto waives any error in the ruling on the demurrer.

2. —— *Amendment—Discretion of the Court.* The allowance or rejection of an amendment to the pleadings is ordinarily committed to the sound discretion of the trial court. Where the record fails to show the reasons upon which the court acted in striking out an answer or counterclaim, the propriety of its action will not be reviewed upon appeal.

3. —— —— *Repetition,* of a pleading already adjudged to be insufficient may be· stricken out on motion.

4. HUSBAND AND WIFE—*Right of One Spouse in the Estate of the Other.* Neither spouse has any right, vested or inchoate, in the estate of the other. The husband's consent to the wife's testamentary disposition of her property is effective as against his creditors, and this even though such consent was given with the active purpose to defeat the right which, the husband surviving the wife, the creditors might otherwise have to resort to the husband's moiety of the wife's estate. The creditor has no right to compel the husband to take as against the provisions of the will, and no standing to afterwards question the probate of the will, or the disposition of the wife's property made thereby.

5. WILLS—*Probate—Effect.* The probate of a will relates to the death of the testator, prevents intestacy as to whatever is devised thereby, and is conclusive of the legality and validity of the testament, as against all the world.

*Appeal from Denver District Court.* HON. CARLTON M. BLISS, Judge.

Mr. PHILO D. TOLLES and Mr. THOMAS D. COBBEY, for appellants.

Messrs. BARTELS, BLOOD & BANCROFT, for appellees.

WALLING, Judge.

The appellees were plaintiffs and had judgment in the district court. The essential facts upon which the judgment depends, as they appear from the complaint of the plaintiffs below, as well as the evidence, are the following:

Bertha E. Rohlfing died on August 5th, 1907,

testate, her heirs at law being Frederick L. Rohlfing, her husband, and her two children, the appellees. The testatrix, at the time of her death, owned in fee simple certain real estate in the City and County of Denver, described in the complaint. By her will, she devised and bequeathed all of her property, real and personal, to the appellees, subject to the payment by them of a certain annuity to Frederick L. Rohlfing, so long as he remained single, and further subject to the right given said Frederick, if he so desired, to use, occupy and enjoy, as his home, until his death or remarriage, certain premises, situated in Wyman's addition to the city of Denver. His right to such occupation and enjoyment of said premises, as his home, could be terminated by him, by surrender in writing to appellees. The will was executed on the 30th day of June, 1894. Frederick L. Rohlfing consented to the making of the will by his wife, and to all of its dispositions and provisions, by a writing signed by him, of the same date, which was attached to the will and attested by the same subscribing witnesses. The will was admitted to probate and record in the county court of El Paso county, on September 9th, 1907, Frederick L. Rohlfing appearing at the probate thereof and consenting thereto; and a further formal written consent to the will, accepting its provisions, was executed by him, and filed in the county court, on the date of the probate. Subsequently, said Frederick L. executed an instrument called an "amended acceptance," which was likewise filed in the county court of El Paso county, in the matter of Bertha E. Rohlfing's estate. The latter instrument recited that it was made to correct a clerical error in the written con-

sent of September 9th, 1907, which erroneously stated the date of the will to be June 3d, A. D. 1894. (No importance will be attached to the so-called ''amended acceptance'' in the discussion which will follow.) Afterwards, by his written instrument, Frederick L. terminated and surrendered to the appellees all the right given him by the will to use, occupy and enjoy, as his home, the premises in Wyman's addition, as above mentioned. During Bertha E. Rohlfing's life, appellants Deutsch, Neef and Zang obtained a judgment in the district court of the City and County of Denver against Frederick L. Rohlfing; and on June 30th, 1907, an execution issued on that judgment to the appellant Nisbet, as sheriff, was, by direction of the judgment creditors, levied upon the undivided one-half of all of the real estate described in the complaint herein, and such undivided half was advertised to be sold under the execution. Appellees, as devisees under their mother's will, brought this action to cancel the levy, as a cloud upon their title, and for an injunction against the sale of any of the real estate, or any interest therein, under the execution against Frederick L. Rohlfing.

The first answer of the defendants to the plaintiffs' complaint consisted of (1) specific admissions and denials of its allegations, and (2) what was called a ''further answer and cross-complaint''. The substance of the second defense of the answer was that, at the time of the making of his wife's will, Frederick L. Rohlfing was indebted to defendants Deutsch, Neef and Zang, besides a number of other persons, and at that time, or shortly prior thereto, Frederick L. Rohlfing had property in his own name,

as had also his wife; that in July, 1903, said defendants obtained a judgment against Frederick L. for $9,673.82, and filed a transcript of that judgment with the recorder of the City and County of Denver; that at the time of the making of Bertha E. Rohlfing's will, she and the plaintiffs knew of the indebtedness of Frederick L. to the defendants and others; that "in order to cheat, wrong and defraud the defendants and other creditors of said Frederick L. Rohlfing," the will was made, and the various consents thereto, accepting its provisions, were given by Frederick; and that the latter had no other property out of which defendants' judgment could be satisfied, other than the one-half of the property belonging to his wife at her death.

A replication was filed to the first defense of the answer, denying all new matters therein. (Since counsel for both parties are agreed that the first defense consisted of admissions and denials, and contained no "new matter", the replication may be disregarded, as superfluous.) At the same time, the plaintiffs demurred to the "further answer and cross-complaint" for insufficiency. The demurrer was sustained, and the defendants were given permission to amend their answer. Within the time allowed for that purpose, the defendants filed their amended answer, which contained three subdivisions, each of the second and third subdivisions commencing with the words, "For a further answer and cross-complaint," etc. Counsel are agreed that the first and third subdivisions of the amended answer are respectively the same as the first defense, and the "further answer and cross-complaint", contained in the original answer. In the second sub-

division of the amended answer, it was alleged, in substance, that on the sixteenth day of June, 1894, Frederick L. Rohlfing was indebted to the defendants and others in large amounts, and insolvent, and, with the intention of cheating and defrauding his creditors and the defendants Deutsch, Neef and Zang, said Frederick L. conveyed by quitclaim deed to his wife, Bertha E., for an alleged consideration of $8,740, a part of the property described in the complaint, describing it, together with other property not here involved. It was further alleged, on information and belief, that there was, in fact, no consideration for that conveyance, and that the pretended transfer was sham and fraudulent; and that Bertha E. was aware of the purpose for which the conveyance was made, and was privy to the fraud. It was further stated that on the 16th and 19th days of June, 1894, Frederick L. conveyed to his wife certain other real property, not mentioned in the complaint; and, upon information and belief, that each of those conveyances was without consideration, and sham, and made for the purpose of cheating and defrauding the creditors of Frederick L., particularly Deutsch, Neef and Zang, with the knowledge and fraudulent connivance of Bertha E. Rohlfing; and that the transfers to his wife, as alleged, rendered Frederick L. insolvent, and his debt to the defendants uncollectible. It was alleged that the defendants had "just recently within the past six months become aware of the fraudulent character of the transfers before referred to."

The amended answer contained a prayer asking that the conveyance from Frederick L. Rohlfing to his wife of a portion of the property described in

the complaint be canceled, as fraudulent, and that the same be sold to satisfy the judgment of the defendants, and for other specific and general relief.

The plaintiffs filed a motion to strike out each of the three subdivisions of the amended answer severally, assigning separate and specific reasons for the motion with respect to each. The ground alleged for moving against the first subdivision of the answer appears to have been that no rule or order had been entered permitting the defendants to amend their first defense, while the ground of the motion as to the third subdivision was that its material allegations were identical with that part of the original answer, which had been adjudged insufficient on demurrer. The reasons assigned for moving to strike out the second subdivision will be noticed hereafter. Upon this motion, the order was made striking "the defendants' amended answer and all the defenses and counterclaims therein contained from the files."

Afterwards, the cause was set down for trial and tried before the court. The plaintiffs introduced in evidence certified copies of Mrs. Rohlfing's will, with the written consent of her husband of the same date attached, the order admitting the will to probate, the instrument consenting to and accepting the terms of the will, signed by the husband and filed in the county court on the date of the probate of the will, as well as the subsequent so-called "amended acceptance," and also the writing whereby he surrendered to appellees all the right given him by the will to the use and occupation of the premises in Wyman's addition, as his home, as above stated. Those proofs were introduced over

the objections and exceptions of the defendants, who offered no evidence. Thereupon the court gave a decree for the plaintiffs, wherein the levy upon the undivided one-half interest in the property described in the complaint, under the execution against Frederick L. Rohlfing, was annulled, and the defendants were perpetually enjoined from selling any part of or interest in said real estate, and it was adjudged that appellees were absolute owners of all of that property, free from any lien, right or claim of, or in favor of the defendants.

It is claimed that it was error to sustain the demurrer to the "further answer and cross-complaint" contained in the original answer, and a great part of the discussion in the briefs is devoted to matters supposed to be involved in that ruling. It seems, however, that we are precluded by the ruling of the supreme court from considering the decision on the demurrer. In *Heaton v. Myers,* 4 Colo. 59, 62, the court said:

"A defendant has no right to continue to present the same defense by different pleas (*Parks v. Holmes,* 2 Ill. 554), nor may he repeatedly refer to the decision of the court, the legal sufficiency of the same defense, under the guise of an amended plea. The defendant having taken leave to amend his fourth plea, waived his right to assign error on the action of the court, in sustaining the demurrer thereto."

In *Hurd v. Smith,* 5 Colo. 233, it was again held, under the code, that the amendment of an alleged defense, after demurrer sustained thereto, waived the right to assign error upon the ruling on the demurrer, and that an amended defense, which was

only a repetition of one adjudged insufficient on demurrer, might be struck out on motion, in the court's discretion.

In *Enright v. Midland S. & O. Co.*, 33 Colo. 341, 343, the cases above cited were approved, and the same rule was applied to the amendment of the complaint after demurrer sustained to the original. The court say:

"By taking leave to (file), and filing an amended complaint, the plaintiff waived any error committed by the court in sustaining the demurrer to the first amended complaint. *Perrigo etc. Co. v. Grimes*, 2 Colo. 651; *Heaton v. Myers*, 4 Colo. 59; *Hurd v. Smith*, 5 Colo. 233; *Rockwell v. Holcomb*, 3 Colo. App. 1. For this reason, the alleged error of the court in sustaining the demurrer cannot be reviewed here. * * When an amended complaint is, in effect, but a repetition of the one which it purports to amend, a motion to strike for that reason is well taken. *Heaton v. Myers, supra.*"

It is conceded that the third subdivision of the amended answer is simply a repetition of the second defense of the original answer to which the demurrer was sustained; consequently, it was not error to strike it out.

But the argument against the ruling on the demurrer to the second defense of the original answer includes one question—perhaps the controlling one on this branch of the case—which may be said to be fairly presented for consideration by the assignments based on exceptions to rulings on defendants' objections to evidence introduced at the trial, and also on their exception to the final judgment, without reference to the allegations of the answer. This

question may thus be stated: Could Mrs. Rohlfing disinherit her husband, by her will, with his consent, as to real estate owned by her at her death, so as to prevent appellants, judgment creditors of the husband, from levying their execution upon the interest, to which their debtor must have succeeded by law, if he had withheld his consent to his wife's will?—or, otherwise expressed: Did the appellees, in virtue of their mother's will, and the written consent to and acceptance of its provisions by Frederick L. Rohlfing, take the property devised to them, the appellees, subject to the claims of the judgment creditors of said Frederick? In fact, it is believed that the question stated would be found to be the substantial one involved in the demurrer to the original answer, if those pleadings were before us for consideration.

As bearing in some way upon the right claimed for appellants to proceed for the satisfaction of their judgment against the undivided one-half of the real estate devised by Mrs. Rohlfing's will, authorities have been cited bearing upon the nature and incidents of the husband's estate by the curtesy, as it exists at common law; and the effort has been made to deduce some analogy between the common law estate by curtesy, and the husband's right of inheritance with respect to the property owned by his wife at her death, existing by statute in this state. It is common knowledge that the husband's estate by curtesy, like the right of dower of the wife, has had no existence or recognition in this state; and there is no reason to suppose that principles applicable to curtesy or dower, as at common law, have influenced in any degree our legislation, as it ex-

isted when the state was admitted, and has existed
to the present time, concerning the property rights
of either husband or wife. It has long been settled,
by repeated decisions of our courts, that, under our
laws, the husband has no vested right, inchoate or
other, by reason of the marital relation, in the prop-
erty belonging to his wife, and that she holds an
absolute legal estate in her real and personal prop-
erty, whether owned at the time of marriage or ac-
quired during coverture, as free from any common
law right of her husband, as if she were unmarried.
"As to her separate estate, she has no husband."
*Wells v. Caywood,* 3 Colo. 487; *Palmer v. Hanna,* 6
Colo. 55; *Colorado Central R. Co. v. Allen,* 13 Colo.
229; *Knight v. Lawrence,* 19 Colo. 425; *Schuler v.
Henry,* 42 Colo. 367. Decisions bearing upon the
rights of the husband's creditors with respect to his
estate by curtesy at common law afford no possible
assistance in the determination of the claims of
these appellants. The husband was without any
legal interest in his wife's property, during her life-
time, and his creditors had no claim upon it.

The contention is urged, however, that inas-
much as, by our laws, a married woman could not,
by her will, bequeath away from her husband more
than one-half of the property, real and personal, be-
longing to her at her death, without the husband's
written consent, the husband was entitled by inher-
itance to one-half of the deceased wife's estate, not-
withstanding the dispositions of her will, and that
the husband's right of inheritance became available
to his creditors for the satisfaction of their demands,
so that he could not, by consenting to the terms of
the will, prevent his creditors from resorting, for

the satisfaction of their claims, to the undivided one-half of the property belonging to the deceased wife's estate. In the last analysis, this is the effect of the argument advanced by counsel for appellants. They say: "The status of the wife is fixed by chapter 83, Mills' Statutes. Sections 3010 and 3011 of said chapter provide that the wife shall not will away more than one-half of her estate without the husband's consent, while section 12, chapter 181, Session Laws of 1903, provides that the consent in writing of one must be given after the death of the other. At common law, the wife could not make a will. Under our statute she can only will one-half of her estate." The force of these statements is not obvious. At no time in the history of the state has a married woman been incapable of making a will, with or without the consent of her husband, nor is it true that "under our statute she can only will one-half of her estate." As stated in the opinion of the late Chief Justice Steele, in *Schuler v. Henry, supra,* "she may dispose of her property by will, and the law places both husband and wife upon the same level with reference to the disposition of property by will." The only restriction upon her absolute right to dispose of her estate by will was the one in favor of her husband, and that had no more to do with testamentary ability, than had the corresponding limitation upon the right of the husband to dispose of his property by will. In neither case did the restriction affect the validity of the will, but it operated only upon the dispositive provisions thereof, in case the spouse of the testatrix or testator survived, and did not consent to the will. *Logan v. Logan,* 11 Colo. 44. Moreover, it cannot with con-

sistency be said that Mrs. Rohlfing's will was not a valid disposition of her entire estate, as the law stood at the time of its execution, since her husband gave his consent in writing at that time, in accord ance with the law then in force. Mills' Ann. Stat. § 3010. But it is insisted that, by force of the act of 1903, the consent given by the husband at the time of the making of the will was invalid at the time of the death of the testatrix. The question as to the retrospective operation of the act of 1903 upon the provisions of Mrs. Rohlfing's will is an interesting one, and its solution is by no means free from difficulty. We are not called upon to solve it, for the reason that counsel for appellees are apparently not disposed to contest the position, that the act of 1903 nullified the consent previously given by Frederick L. Rohlfing, and are content to base their argument on this branch of the case upon the consent given at the time of the probate of the will. In view of this agreement among counsel, it will be assumed, without deciding the point, that the law of 1903 is controlling. The applicable provisions of the last mentioned statute are the following:

"Every person, aged twenty-one years, if a male, or eighteen years, if a female, being of sound mind and memory, shall have the power to devise all the estate, right, title and interest in possession, reversion or remainder, which he or she hath or at the time of his or her death shall have, of, in and to any lands, tenements, hereditaments, annuities or rents charged upon or issuing out of them, or goods, chattels and personal estate of every description whatever, by will or testament; all persons of the age of seventeen years, and of sound mind and mem-

ory, shall have the power to .dispose of their personal estate, by will or testament; *Provided,* That no married man or woman shall by will devise or bequeath away, one from the other, more than one-half of his or her property, without the consent in writing of such other, executed after death of the testator or testatrix, but it shall be optional with such wife or husband, after the death of the other, to accept the condition of any such will or one-half of the whole estate, both real and personal." R. S. 1908, § 7070.

It is reasonable to suppose that everyone familiar with the history of our legislation would be willing to admit that "every person" and "all persons" would have included married women, even if they were not expressly mentioned in the proviso of the section last quoted; while the evident effect of that proviso was simply to give the surviving husband the same right with respect to his wife's will, after her death, which the wife had at all times exercised by law concerning the will of the husband. See Mills' Ann. Stat. § 3011. That is to say, the proviso made it optional with the surviving husband or wife to accept the provisions of the will of the deceased spouse, or one-half of the property, real and personal, belonging to the latter's estate. In this case, the husband exercised that option by appearing at the probate of the will and filing his written consent to and acceptance of its provisions, and the will was thereupon duly and solemnly admitted to probate. By his election thus made, he was irrevocably bound, and the order admitting the will to probate is conclusive of the legality and validity of its contents, as against all persons. Rev. Stat.

§ 7096. If appellants, creditors of Frederick L. Rohlfing, had a right to object to the provisions of the will, notwithstanding his consent thereto, it seems that they should have appeared to contest the probate in the county court, which was by the statute vested with ample jurisdiction in the premises, either at the time fixed for the hearing on the original application to admit to probate, or within the statutory period thereafter. But they had no interest in the deceased wife's estate upon which to base such contest. Their only right was against the property of their debtor, and such interest as he had in his wife's estate was acquired through her will.

Of the cases cited by counsel, the one which seems to be most applicable to the present controversy is the matter of *Fleming's Estate,* 217 Pa. 610. That case involved the right of the husband's creditors to compel him to elect to withhold his consent to the provisions of his deceased wife's will, and to elect to take the interest in her estate given him by the intestate laws. The substance of the statute, upon which the husband's right of election depended, was thus stated in the court's opinion:

"The power of a married woman to dispose of her property by will is so restricted by the Act of May 4, 1855, P. L. 430, 2 Purd. (12th ed.) 2104, 'that any surviving husband may, against her will, elect to take such share and interest in her real and personal estate, as she can, when surviving, elect to take against his will in his estates, otherwise to take only her real estate as tenant by the curtesy.' "

With respect to the claim made on behalf of the husband's creditors, the court said:

"We think that the right of the husband to

elect to take against the provisions of his wife's will is simply a personal privilege and is not an asset for the payment of his debts or a right which he can be compelled to exercise so as to discharge his trust liabilities. Every sane person of lawful age in this commonwealth has a right to dispose of his property by will, and the policy of the law is to encourage the exercise of that right. A married woman has now the same right as her husband to devise her property and that right should not be curtailed by the court compelling an unwilling husband to defeat it by an election to take against her will. His action in the premises is optional with him, but if he wishes to respect the last wishes of his wife as well as carry out the manifest policy of the law he refuses to interfere with the disposition which she makes of her property. * * If the court may compel the husband to take under the intestate laws and against his wife's will, it may, with the same reason and by the exercise of the same authority, compel him to elect to take under the will. The action of the court would then depend in each case upon the interest of the creditor or other party to whom the husband was liable, and would deprive him of his statutory right to make the election. If the husband's interest in his wife's estate under the intestate law was greater than his interest under the provisions of her will, the court at the instance of the creditor would compel the husband to take against the will. If, on the contrary, the interest of the husband under the will should be greater than his interest under the intestate laws, the court would at the instance of the creditor compel the husband to accept the provisions of the will.

The election, therefore, would not be a personal privilege of the husband, which this court has declared it to be, but would be a right which the husband's creditor could control as his interest should demand. This would not be an election by the husband but by the creditor. Such was certainly not the intention of the legislature in conferring upon the husband the right of election."

This satisfactory reasoning may well be applied to the conditions of our own statute giving the right of election to the husband to accept the provisions of his wife's will or take his share of her estate, as in case of intestacy.

Counsel on either side have referred to the decision in *Wolfe v. Mueller,* 46 Colo. 339, as in some way affecting the merits of the present controversy, although that decision seems to afford little aid in the solution of the matter, unless by way of suggestion. In that case, the wife's will was made in 1906, and, upon her subsequent death, was propounded for probate. Her husband survived her, but died before the time fixed for the probate of the will, without having had any notice of the filing of the will. Subsequently, his children contested the probate of the wife's will, "in so far as one-half of the estate of (the testatrix) was concerned." The court held that the will had the effect to deprive the husband of more than one-half of his wife's estate, and that, inasmuch as he had not consented to its provisions, his heirs became entitled, upon his death, to the interest which he would have taken in the deceased wife's estate, if the latter had died intestate, and that the county court erred in admitting the

will to probate as conveying the wife's entire estate, the court saying:

"Under the terms of the statute, each spouse has the option to take the property given by a will or one-half of the estate, and unless the written consent is given, he must be deemed to have elected to take the portion under the statute. In this case, no notice was given of the filing of the will, and the surviving husband never had the opportunity of electing."

It will be observed that the conclusion of the supreme court was, not that the will was invalid, in whole or in part, but that the failure of the surviving husband to consent raised the conclusive presumption of his election to take under the law, and therefore that one-half of the wife's estate must be regarded as intestate property. But in the instant case, the surviving husband having consented to the will, it was admitted to probate finally, and without reservation or condition, as it should have been. To contend that such consent of the husband was fraudulent as to his creditors, because it defeated their hopes or expectations of receiving payment of their demands out of what he would otherwise have inherited under the statute, is simply to beg the whole question. If appellants had not the right to compel their debtor, either in the court of probate or a court of equity, to elect to take against the will, and we think they had no such right, they had no standing, after his consent to the will, to question its dispositions, in law or equity. The probate of the will related back to the death of the testatrix, so as to prevent intestacy as to any part of her estate; and the title to the real property devised to appellees

vested completely in them upon their mother's death.    1 Underhill on Wills, p. 21.   The appellants are therefore without privity or interest respecting the property devised to appellees, precisely as if their debtor had died before his wife.   No claim has been asserted in the briefs on the part of appellants as to the right given to Frederick L. Rohlfing by his wife's will to the use and occupation of the premises in Wyman's addition, as his home.   Nothing in the foregoing discussion has any reference to the allegations of the second subdivision of the amended answer with respect to the property therein alleged to have been conveyed by Frederick L. Rohlfing to his wife, in June, 1894, in fraud of his creditors.

Having already disposed of the matter of the motion to strike out the amended answer, so far as it related to the third subdivision thereof, there remains for consideration the ruling on that motion with respect to the first and second subdivisions of that pleading.   Appellants' counsel have not insisted in argument upon the assignment of error based on the striking out of the first defense of the amended answer.   It is asserted in the brief for appellees, in effect, that the result of the order striking out the entire amended answer was to leave the case standing upon the complaint, the first defense of the original answer, and the replication thereto (the replication being of no effect), and that the cause was tried in the district court upon those pleadings and the evidence introduced by plaintiffs.   Since appellants' counsel, in their reply, do not controvert any part of their opponents' statement in that particular, and no specific complaint has been made

concerning the action of the court in striking out
the first defense of the amended answer, it will be
assumed that they do not rely on that matter as
prejudicial error.

It is earnestly contended, however, that the
court erred in striking out the "further answer and
cross-complaint", constituting the second subdivi-
sion of the amended answer. The grounds of the
motion to strike this portion of the amended answer
are understood to be, (1) That there was no appli-
cation or order for leave to file the same; (2) That
the attempt was made thereby to set up "an entirely
new defense and cross-complaint not found in the
original answer"; (3) That the defendants were
barred by their laches, as well as by the statute of
limitations, from attacking the conveyance therein
mentioned as fraudulent; (4) That the defendants
had knowledge of the matters therein set forth at
the time of filing the original answer, and there was
no sufficient showing why the defense or counter-
claim had not been pleaded in the first instance. We
are not advised as to the court's reasons for sus-
taining the motion to strike this defense or counter-
claim, which the defendants undertook to plead for
the first time in the amended answer. It is the set-
tled rule of our courts that the matter of allowing
amendments to the pleadings is ordinarily com-
mitted to the sound legal discretion of the trial
court, which is only reviewable in a case of manifest
abuse. *Cartwright v. Ruffin*, 43 Colo. 377; *Sigel-
Campion Co. v. Holly*, 44 Colo. 580. We are of the
opinion that the record does not show such manifest
abuse of discretion in rejecting this amendment to

the answer, as to require the reversal of the judgment on that ground.    The judgment is affirmed.

*Affirmed.*

Decided June 10, A. D. 1912.    Rehearing denied October 14, A. D. 1912.